_____

Nos. 95-4219/4220
_____

Peggy Kimzey,                          *
                                       *
    Cross-Appellant/Appellee,      *
                                       *   Appeals from the United States
    v.                             *   District Court for the Western
                                       *   District of Missouri.
Wal-Mart Stores, Inc.,                 *
                                       *
    Appellee/Cross-Appellant.      *
                                   _____

Submitted:  September 10, 1996

Filed:  February 20, 1997
                                   _____

Before FAGG, HEANEY, and MURPHY, Circuit Judges.
                                   _____

MURPHY, Circuit Judge.

Wal-Mart Stores, Inc., appeals from a judgment awarding Peggy Kimzey, its former employee, compensatory and punitive damages on  her hostile work environment and constructive discharge claims.  The jury returned a verdict of $35,000 for compensatory damages, $1.00 for back pay, and $50,000,000 for punitive damages.  After trial the district court reduced the punitive damages award to $5,000,000; this action is the basis of Kimzey's cross-appeal.  We affirm in part and reverse in part.

I.

In July 1988, Kimzey began work as an associate in the receiving department at the Wal-Mart store in Warsaw, Missouri.  She left her job for a few months in the beginning of 1989 to care for her sick mother and returned to her position at Wal-Mart in

April 1989.  Kimzey left Wal-Mart in April 1993, and filed suit under Title VII, 42 U.S.C. § 2000e-5(e), and the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. §§ 213.010-213.095, charging that she had been sexually harassed throughout her employment and that management ignored her complaints, that she had experienced a hostile work environment, and that she had been constructively discharged.

During Kimzey's first period of employment, her supervisor and an assistant store manager made sexual remarks to her and commented on her body.  One incident occurred when Kimzey was bending over a box to process freight.  Michael Mais, who was then an assistant store manager, gestured toward her bottom and told Henry Brewer, Kimzey's supervisor, that "he had found a place to put his screwdriver."  Kimzey objected, but Mais continued his gestures.  When she told him that was enough, Mais replied: "Oh, you don't know.  You might enjoy it."  On another occasion when Kimzey's breasts touched a stack of boxes while she was moving freight, Brewer and Mais laughed, and Mais said, "Well, you can't exactly get through there, can you, with those things sticking out?"  Brewer also smacked his lips and made kissing noises at Kimzey.

After Kimzey's return to Wal-Mart in April 1989, both Mais and Brewer engaged in similar behavior toward Kimzey and other women as well.  Mais continued as an assistant store manager until he became store manager around 1991, and Brewer remained her supervisor during this period.  There was testimony that Brewer and Mais treated women differently from men and that they did not act or talk to men in the same offensive manner.  Mais kicked the legs of Kimzey and other female employees when he walked by and once shook a ladder on which Kimzey was standing and laughed when she almost fell.  Mais frequently called Kimzey names such as "mother-fucker" and "lazy-son-of-a-bitch."  When Kimzey or other women bent over to pick up merchandise, Mais commented on their "tight-ass jeans."  He also commented on the women's anatomy and called one female employee a "fat bitch."  Mais used profanity with women, even

though he was aware that some of them were offended by this usage. Brewer followed Kimzey around the store and out to the parking lot when she left work, called her names like "damn dummy," "stupid," and "idiot" on a daily basis, and regularly yelled at her for extended periods. He also told Kimzey that another employee wanted to assist her when she worked on the ladder so he could look at her "cute ass." Brewer screamed and swore at other female employees as well.

Wal-Mart has an open-door policy under which employees are encouraged to report harassment to any level of management. The Wal-Mart Associate Handbook states:

> Harassment of any type whether sexual, ethnic, racial, etc. is not tolerated at Wal-Mart. We want to provide a work environment where everyone is comfortable. Harassment includes offensive language, gestures, physical contact or other conduct which destroys that environment.
>
> If you have any problems with or questions concerning harassment, use our Open Door Policy. If your immediate supervisor is part of the problem, go to the next level of management. There will be no retaliation for reporting harassment and all reports of harassment will be investigated.
>
> Your individual privacy will be of utmost importance. Individuals who engage in harassment will be disciplined up to and including termination depending on the circumstances.

Kimzey's expert witness testified that to implement this policy in a company the size of Wal-Mart, a manager who becomes aware of a problem with an employee should interview other employees to see if the problem is ongoing or isolated. The manager should also prepare a written report to include in the employee's file in order to track whether the problem continues. Brewer testified that he had received no training on the policy, and there was no other

evidence introduced indicating that any training was in place at the Warsaw store.

Kimzey complained to members of Wal-Mart management several times about the conduct of Mais and Brewer, but no action was taken on those complaints and the situation did not improve. Kimzey also complained to Mais about his "nasty remarks" and the profane language he used with her, but he did not change. Kimzey and other women complained to Mais about being kicked, but he did not stop the kicking. When Kimzey told Brian Woirhaye, an assistant manager, about Brewer following her around the store, he indicated he was aware of the problem and even referred to Brewer as Kimzey's "shadow," yet he did not take any action. Her complaint to Woirhaye in early 1992 about Brewer's drinking and resulting abusive behavior did not result in an investigation or any other action.

Kimzey also reported to management about two different incidents where she was pinched on the buttocks by a co-worker. After the first incident, Kimzey complained to Woirhaye. He did not investigate, prepare a written report, or take any other action. On receiving the second complaint, Woirhaye laughed and said that he should probably do something about it since two other female employees had also made similar complaints. Woirhaye apparently did nothing further.

When Kimzey complained about Brewer to Marci Turner, another assistant manager, Turner told her it sounded like sexual harassment. Although Turner did not investigate the complaint or prepare a written report, she did report Kimzey's complaint to Mais who had by then been promoted to store manager. Mais spoke with Kimzey, and she repeated her complaints about Brewer's behavior, drinking, and intimidation. Mais' only response, however, was to ask Brewer if he had been drinking at work. The situation did not improve, and when Kimzey continued to complain, Mais told her there was nothing he could do about Brewer and became upset with her.

Other women at Wal-Mart also complained to management about Brewer's conduct, but action was not taken on their complaints either.

There was testimony that Kimzey's demeanor changed during the time she worked at the Warsaw store. At the beginning Kimzey had a positive attitude about work, but she became upset after harassing incidents. Later other employees began to see Kimzey crying, and toward the end of her employment she appeared agitated, upset, and nervous almost all the time.

On April 7, 1993, Kimzey told Mais that she was leaving Wal-Mart because of Brewer's conduct and management's indifference to her complaints. Although Mais was aware of Kimzey's stated reasons for leaving Wal-Mart, he did not indicate that he would investigate her complaints or take any other action required by Wal-Mart's open door policy. In her exit interview he did offer her other positions as an associate in either night receiving or in the garden center. She declined both because she was physically unable to work the hours required in night receiving and the garden center schedule included nights, week-ends, and holidays.

On appeal, Wal-Mart claims that the district court erred in admitting evidence of incidents before August 1992 because they occurred outside the period for which Kimzey can recover. Wal-Mart also argues that Kimzey failed to produce sufficient evidence of a hostile work environment or constructive discharge, that punitive damages should not have been submitted to the jury, and that the $5,000,000 punitive damages awarded in the judgment is excessive. Kimzey responds that events before 1992 are admissible because they were relevant background and because there was evidence of a continuing violation. She also asserts she produced sufficient evidence to support her sexual harassment claims and the punitive damages award, and argues in her cross-appeal that part or all of

the punitive damages award should be reinstated.[1]

                                    II.

     The first issue raised on appeal is whether the district court abused its discretion in admitting evidence from Kimzey's initial employment period.  Crane v. Crest Tankers, Inc., 47 F.3d 292, 294 (8th Cir. 1995).  Wal-Mart argues that any evidence of incidents before August 1992 is time-barred because Kimzey cannot recover for those acts.  It says these incidents were unrelated to later conduct and irrelevant because Kimzey did not believe she worked in a hostile environment when they occurred.

     A sex discrimination complainant may recover for any discriminatory act for which the statute of limitations has not expired.  Gipson v. Kas Snacktime Co., 83 F.3d 225, 229-30 (8th Cir. 1996) (citing Ashley v. Boyle's Famous Corned Beef Co., 66 F.3d 164, 167-68 (8th Cir. 1995) (en banc).  A Title VII complainant must file a charge with the Equal Employment Opportunity Commission within 300 days of the discriminatory act or occurrence.  42 U.S.C. § 2000e-5(e).  The Missouri Human Rights Act contains a 180 day period for filing.  Mo. Rev. Stat. § 213.075(1).  Because Kimzey filed her charge in June 1993, she can recover for acts reaching back to August 1992 under Title VII and to December 1992 under the MHRA.  Gipson, 83 F.3d at 230.

     Evidence of incidents occurring outside the limitations period may still be admissible.  One instance is when the incidents are part of a continuing violation.  Burns v. McGregor Elec. Indus., Inc., 955 F.2d 559, 563 (8th Cir. 1992).  Evidence of a hostile environment can constitute such a continuous violation.  Varner v.

---

[1]After Wal-Mart pointed out that Kimzey had only objected to the amount of the remittitur in the notice of appeal, she abandoned the argument that the district court erred by remitting the punitive damages award without offering the option of a new trial.

National Super Mkts., Inc., 94 F.3d 1209, 1214 (8th Cir. 1996); Gipson, 83 F.3d at 229. In a hostile work environment claim, evidence concerning all circumstances of the complainant's employment must be considered, including the frequency of the offending conduct, its severity, whether it was physically threatening or humiliating, and whether it unreasonably interfered with work performance. Harris v. Forklift Sys., Inc., 114 S. Ct. 367, 371 (1993); Burns, 955 F.2d at 563-64 (district court was required to consider harassing conduct which occurred during all periods of employment). Incidents which occurred outside the filing period also may be admissible as relevant background to later discriminatory acts. United Airlines, Inc. v. Evans, 431 U.S. 553, 558 (1977).

There was evidence at trial that Mais and Brewer engaged in abusive conduct during both periods of Kimzey's employment at Wal-Mart, that the conduct was similar in nature, and that it upset Kimzey as it occurred. This course of conduct included acts such as gesturing toward Kimzey's rear with a screwdriver and making lewd suggestions, kissing noises, comments on her breasts, following her around the store and out to the parking lot, abusive language, and inappropriate physical contact such as leg kicking. The failure of Mais and other managers to take action in response to her complaints added to the hostile environment. Burns v. McGregor Elec. Indus., Inc, 989 F.2d 959, 965 (8th Cir. 1993).

Kimzey concedes the statute of limitations began to run from the time of her constructive discharge in April 1993. When she filed her complaint in June 1993, the outside limit under the 300 day period for which she could recover became August 1992. Gipson, 83 F.3d at 229-30. The incidents which occurred prior to that date were relevant, however, to illustrate a pattern of sex discrimination and its effects on Kimzey and in determining whether a hostile work environment existed. The incidents were not unduly prejudicial, and the district court did not abuse its discretion in admitting the evidence.

III.

Wal-Mart contends that Kimzey did not produce sufficient evidence to prove her hostile work environment claim because she failed to show that the conduct occurred because of her sex and that she subjectively believed she worked in a hostile environment. Wal-Mart also asserts that Kimzey failed to prove a constructive discharge because it promptly investigated her complaints when it became aware of them and offered her other jobs. Kimzey responds that she produced sufficient evidence to meet her burden under Title VII and the MHRA for her claims of a hostile work environment and constructive discharge.

A jury verdict will be upheld if the evidence, viewed in the light most favorable to the prevailing party, is sufficient for a reasonable jury to have found for that party. Chicago Title Ins. Co. v. Resolution Trust Corp., 53 F.3d 899, 904 (8th Cir. 1995). Whether an issue was properly before the jury, however, is a legal question which is reviewed de novo. Id. The evidence relating to each claim must therefore be examined.

A.

In order to establish an objectively hostile working environment, the offending conduct must have been sufficiently severe or pervasive. Harris, 114 S. Ct. at 370. More than a few isolated incidents are required. Meritor Sav. Bank v. Vinson, 477 U.S. 57, 67 (1986). Unless a victim of harassment has a subjective belief that she is working in a hostile environment, the harassment has not "actually altered the conditions of the victim's employment." Harris, 114 S. Ct. at 370.

A workplace permeated with "discriminatory intimidation, ridicule, and insult" is sufficiently severe to establish a hostile work environment. Harris, 114 S. Ct. at 370 (citing Meritor, 477 U.S. at 65). Here Kimzey introduced evidence that Mais and Brewer

engaged in numerous incidents of offensive conduct against Kimzey and other women working at the Warsaw Wal-Mart. Mais gestured with a screwdriver toward Kimzey's rear and kicked her leg on several occasions. Brewer made kissing noises at Kimzey and followed her around the store. Mais and Brewer also made sexual comments about Kimzey and spoke to her with abusive language. This behavior began shortly after Kimzey started work at the store and continued throughout her employment. Management repeatedly ignored her complaints despite the written policy against harassment and the requirement under that policy to investigate all complaints and take appropriate disciplinary action. This evidence demonstrates more than a few isolated incidents of harassment and is sufficient to establish a hostile work environment. See Hall v. Gus Constr. Co., 842 F.2d 1010 (8th Cir. 1988).

There was also evidence that both Mais and Brewer treated women differently from men and that the conduct upset Kimzey. Mais singled out women to kick and commented on their "tight-ass" jeans or their physical anatomy. Other employees testified that Mais and Brewer directed harsh treatment, abusive language, and profanity at women, but not at men. Co-workers testified they noticed that Kimzey appeared agitated, upset, and nervous almost all the time toward the end of her employment. Kimzey herself testified that she found the conduct upsetting as it occurred. Kimzey produced sufficient evidence to establish her hostile work environment claim as a matter of law, and on this evidence a reasonable jury could find that Kimzey was treated differently because of her sex and that she had a subjective belief she worked in a hostile environment that "altered the conditions of [her] employment."

B.

Wal-Mart claims that Kimzey failed to prove she was constructively discharged. Wal-Mart contends that she did not complain to management until a few months before her resignation and that it responded appropriately by investigating that complaint

and offering her other positions.

A constructive discharge occurs when an employer renders the employee's working conditions intolerable, forcing the employee to quit. Johnson v. Bunny Bread Co., 646 F.2d 1250, 1256 (8th Cir. 1981). If an employee quits because she reasonably believes there is no chance for fair treatment, there has been a constructive discharge. Winbush v. State of Iowa by Glenwood State Hosp., 66 F.3d 1471, 1485 (8th Cir. 1995). An employee must give an employer a reasonable opportunity to work out a problem before quitting. West v. Marion Merrell Dow, Inc., 54 F.3d 493, 497 (8th Cir. 1995) (citations omitted). Merely offering a different job to an employee does not necessarily shield an employer from liability for constructive discharge, however. Parrish v. Immanuel Med. Ctr., 92 F.3d 727, 732 (8th Cir. 1996) (constructive discharge where employee required to work nights doing tasks she would find demeaning).

Here, there was evidence that members of Wal-Mart management knew Kimzey had been harassed throughout her employment and that the frequency of her complaints increased as Brewer's behavior became more abusive. See Burns v. McGregor Elec. Indus., Inc., 955 F.2d 559, 565 (8th Cir. 1992) (owner's participation in harassment and employee's complaints to supervisors shows management knew of harassment); cf. Zimmerman v. Cook Cty. Sheriff's Dept., 96 F.3d 1017, 1019 (7th Cir. 1996) (request for transfer because of personality conflict does not notify employer of harassment by nonsupervisory employee). Kimzey had tried using Wal-Mart's open door policy and complained to several members of management on different occasions about the harassment by Mais and Brewer, but management generally ignored those complaints. The one time that Mais looked into a complaint, he told her there was nothing he could do about it. There was evidence that the conduct and indifference were increasingly upsetting to Kimzey. A reasonable jury could find that the continuing harassment and management's indifference rendered Kimzey's working conditions intolerable and

-10-

forced her to quit.

Wal-Mart also argues that under <u>Smith v. Goodyear Tire & Rubber Co.</u>, 895 F.2d 467 (8th Cir. 1990), Kimzey was required to try management's solution to her complaints and move to the garden center or the night shift in receiving.  There was no evidence in <u>Smith</u>, however, that the employer had made the employee's working conditions intolerable.  Rather, the employer in <u>Smith</u> was restructuring and offered the employee the same position other similarly situated workers were being offered.  <u>Id.</u> at 473. In contrast, Kimzey's constructive discharge claim rests on evidence of a hostile work environment and an unresponsive management.  Even at the exit interview when Mais offered her the other positions, he made no suggestion he would investigate her complaints or try to ameliorate the situation or consider disciplinary action.  The district court therefore did not err in submitting Kimzey's constructive discharge claim to the jury.

IV.

Both sides contest the punitive damages award.  Wal-Mart argues that evidence at trial was insufficient to meet either the state or federal standard for punitive damages because both require outrageous misbehavior. According to Wal-Mart, punitive damages were not appropriate because Brewer was equally abusive to all employees, and management at the Warsaw store responded properly to Kimzey's complaints.  Kimzey responds that there was sufficient evidence to support punitive damages and argues that all or part of the punitive damages should be reinstated.

The standard under Missouri law for punitive damages requires "conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others." <u>Burnett v. Griffith</u>, 769 S.W.2d 780, 789 (Mo. 1989) (en banc) (quoting the Restatement (Second) of Torts § 908(2) (1979)).  The requisite level of recklessness or outrageousness can be inferred from

-11-

management's participation in the discriminatory conduct.  <u>Compare</u> <u>Kientzy</u> <u>v. McDonnell Douglas Corp.</u>, 990 F.2d 1051, 1062 (8th Cir. 1992) (awarding punitive damages where a supervisor disciplined a female employee more harshly than male employees who violated similar rules), <u>with</u> <u>Varner</u>, 94 F.3d at 1214 (denying punitive damages where only one co-worker who was not a supervisor or manager harassed the plaintiff).

There is a similar standard under Title VII which permits punitive damages when an employer is found to have "engaged in a discriminatory practice with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  42 U.S.C. § 1981a(b)(1). Title VII provides that the upper limit on an award including punitive and compensatory damages in a case such as this is $300,000.  42 U.S.C. § 1981a(b)(3) (limits on the sum of compensatory and punitive damages awards for different size employers).

We have found nothing in the instructions or the record explicitly stating whether punitive damages were submitted to the jury under Missouri law, federal law, or both.  The court instructed the jury that:

> In addition to the damages mentioned in the other instructions, the law permits the jury under certain circumstances to award an injured person punitive damages in order to punish the defendant for some extraordinary misconduct and to serve as an example or warning to others not to engage in such conduct.
>
> [I]f you find that defendant acted with malice or with reckless indifference to plaintiff's right not to be discriminated against on the basis of her sex . . . you may . . . award plaintiff an additional amount as punitive damages . . ..

No instruction was given on the Title VII damages limitation, and after trial the district court treated the award as one under Missouri law, since its reduction resulted in an amount far above

the federal maximum.

There was sufficient evidence to support the claim going to the jury under either state or federal law. There was evidence that Brewer, Kimzey's supervisor, and Mais, the store manager, instigated and participated in many incidents of harassment and that they treated women differently from men. Mais commented on Kimzey's breasts and her "tight-ass" jeans and made crude jokes about her, including suggesting that he had found in her rear a place to put his screwdriver. Mais called Kimzey names like "mother-fucker" and "lazy-son-of-a-bitch" and kicked her when he walked by. Mais also kicked other women, commented on their bodies, called them names, and used profanity with them. Brewer participated with Mais in crude jokes, made kissing noises at Kimzey, called her names, and followed her around the store. Brewer also used profanity with other women at the Warsaw store.

Wal-Mart management repeatedly ignored the complaints made about this conduct, and there was evidence that the corporate policy was not carried out at the Warsaw store. Kimzey complained to Brewer and Mais directly several times about their behavior, but they ignored her complaints. Other members of management were made aware of the offending conduct, but did not investigate complaints or make any attempts at discipline as a result. Kimzey complained to Woirhaye, an assistant store manager, about pinching, being followed around the store, and Brewer's abusive conduct, but Woirhaye failed to investigate the complaints or take any other action as required by the Wal-Mart policy. Kimzey also complained to Turner, another assistant manager, about Brewer, but she also failed to investigate. When Turner reported Kimzey's complaint to Mais, he merely asked Brewer if he was drinking on the job. On other occasions when Kimzey complained about Brewer's conduct to Mais, he not only failed to investigate the complaint, but became upset with her. There was evidence that other women complained about Brewer's conduct, but management took no action. This evidence was sufficient to establish the reckless or intentional

indifference to Kimzey's rights necessary for submitting punitive damages to the jury under both state and federal law.

Wal-Mart contends that the amount of the award "shocks the conscience" because it is out of proportion to the actual damages and so excessive it violates the Fourteenth Amendment. BMW of N. Am., Inc. v. Gore, 116 S. Ct. 1589, 1598 (1996). Wal-Mart contends that the total damages award should not exceed $300,000, the Title VII cap, which it argues is the national consensus for the upper limit of awards in employment discrimination cases.

There is no language in Title VII indicating that its upper limit is to be placed on awards under state anti-discrimination statutes, and Wal-Mart points to no legislative history showing this intent. State law cannot be displaced by federal law without the clear intent of Congress, Hillsborough Cty. v. Automated Med. Labs., Inc., 471 U.S. 707, 715 (1985) (citations omitted), and evidence of such intent is missing here. Wal-Mart's argument that the award under state law can be no larger than $300,000 thus fails.

Missouri places no set limit on punitive awards, but requires that "when punitive damages are awarded by a jury, both the trial court . . . and the appellate court review the award to ensure that it is not an abuse of discretion." Call v. Heard, 925 S.W.2d 840, 849 (Mo. 1996) (en banc). Several factors may be considered, including the degree of malice or outrageousness of the defendant's conduct, aggravating and mitigating circumstances, the defendant's financial status, the character of both parties, the injury suffered, the defendant's standing or intelligence, and the relationship between the two parties. Id. at 849 (citing Moore v. Missouri-Nebraska Exp., Inc., 892 S.W.2d 696, 714 (Mo. Ct. App. 1994)). "An abuse of discretion is established when the punitive damages award is so disproportionate to the factors relevant to the size of the award that it reveals 'improper motives or a clear absence of the honest exercise of judgment.'" Call, 925 S.W.2d at

-14-

849 (citation omitted).

The district court found that the $50,000,000 punitive damages awarded by the jury was excessive and theorized that "the disparity arose from the aggravating behavior of defense counsel at trial."[2] In reducing the award to $5,000,000 the district court considered management's participation in the harassing behavior, its failure to improve Kimzey's situation or to educate supervisors about the "Civil Rights Act," and its attempt to punish Kimzey by forcing her to change jobs. The court found no mitigating factors.

A district court's determination concerning whether a punitive damages award is in accordance with state law is reviewed for abuse of discretion. Browning-Ferris Ind. of Vermont v. Kelco Disposal, Inc., 492 U.S. 257, 278-79 (1989); Gasperini v. Center for Humanities, Inc., 116 S. Ct. 2211, 2223-24 & n.18 (1996). Wal-Mart argues the $5,000,000 punitive damages award is excessive under Missouri law because it does not reflect the type of injury Kimzey suffered or the mitigating circumstances present. Kimzey contends in her cross-appeal that the district court erred in reducing punitive damages because the jury's verdict was supported by the evidence and the award should be reinstated completely or in part.

Punitive damages awards in sexual discrimination cases under the MHRA have previously been upheld by federal courts in a range of amounts. In Kientzy, 990 F.2d at 1062, an award of $400,000 was affirmed where a woman was treated differently from male employees for violating similar company rules, resulting in her discharge. An award of $125,000 was approved in Finley v. Empiregas, Inc., 975

---

[2]For example, the district court noted that defense counsel waved his middle finger in Kimzey's face and "rudely shouted" during cross-examination, "Ma'am, do you know that to most of us [this] means fuck you? Do you know that?" The court also observed that the defense produced only one witness, Brewer, even though Mais was present through the whole trial and the proceedings were delayed by Brewer's late arrival.

F.2d 467, 472 (8th Cir. 1992), where a manager had told a female employee that company policy would not permit her to be promoted to store manager because she was a woman.  See also Farhat v. Sally Beauty Co., 1994 WL 645282, No. 91-2177-C-CAS, at *1 (E.D. Mo. 1994) ($200,000 punitive damages under the MHRA for replacing the plaintiff during her maternity leave with someone without experience and then offering the plaintiff a job paying one-half her previous salary).

The district court was correct to reduce the amount of punitive damages awarded by the jury because the amount was excessive.  No reasonable jury could have awarded $50,000,000 in punitive damages based on the evidence and the application of the relevant factors under Missouri law.  Kimzey has not shown that the amount of punitive damages awarded in the judgment should be increased.

Careful review of the evidence in light of the relevant factors under Missouri law and considering awards in other similar cases leads to the conclusion that the $5,000,000 punitive damages award in the judgment was still excessive.  The district court did not indicate it considered the nature of the harassment or certain mitigating circumstances.  The harassing conduct was certainly objectionable but was not the most egregious type of sexual harassment.  Just as in Kientzy, Empiregas, and Farhat, there was no serious sexual assault or physical touching, no quid pro quo harassment, or no retaliation for complaints.  The jury assessed low actual damages of $35,000 (and one dollar in back pay), even though Kimzey had requested damages for emotional pain, inconvenience, humiliation, embarrassment, and degradation and her expert had testified she lost over $130,000 in income.[3]  Moreover,

---

[3]Punitive damage awards approved in other Missouri gender discrimination cases are in a much lower ratio to actual damages than the dissent's suggested award of $2,000,000 would be.  For example, in Kientzy punitive damages were only twice the amount of actual damages.  In Finley, where the company had a policy to discriminate, punitive damages were less than thirty times the actual damages awarded.  An award of $2,000,000 here would be almost sixty times the amount of actual damages.

Wal-Mart has an appropriate corporate policy in place against harassment and there was no evidence that anyone outside the Warsaw store was made aware of the incidents occurring there. Although there was conflicting testimony on whether this policy was effective, one of Kimzey's witnesses testified that the policy had worked for another employee and that she had been encouraged to use it. Considering all the aggravating and mitigating circumstances, including the nature of the harassment and the involvement of managers in it, the lack of responsiveness to complaints, the existence of a corporate policy against harassment, the failure to train supervisors about the policy or of on-site managers to carry it out, the amount awarded in actual damages, and the relative size of Wal-Mart, an award of punitive damages in the amount of $350,000 would be reasonable under Missouri law.[4] The district court abused its discretion by not reducing the award to such reasonable amount in light of all relevant factors. The case must therefore be remanded for further proceedings.[5]

V.

For these reasons, the district court is affirmed with respect to liability and compensatory damages, but reversed with respect to the amount of punitive damages awarded. The judgment is vacated, and the case is remanded for further proceedings consistent with

---

[4]Since such amount is not out of proportion to the other damages awarded, any due process argument based on disproportionality would be moot.

[5]The dissent suggests that a remand for a new trial on punitive damages would be preferable, but no rule requires adoption of that procedure in our circuit. Compare Guzman v. Western State Bank of Devils Lake, 540 F.2d 948, 953 (8th Cir. 1976) (district court to enter judgment on the remitted punitive damages) with Morrill v. Becton, Dickinson & Co., 747 F.2d 1217, 1225 (8th Cir. 1984) (option of new trial or acceptance of remittitur).

this opinion.

HEANEY, Circuit Judge, concurring and dissenting.

The majority has written a thorough and well-reasoned opinion from which I depart only on a narrow aspect of its discussion of punitive damages. I agree that the evidence warranted the submission of punitive damages to the jury under both state and federal law, that the jury's award of $50 million was excessive, and that the district court properly reduced the punitive award. I also agree that, in considering a reduction of the award, the federal cap on punitive damages does not apply to state anti-discrimination statutes. My only concern is with the majority's $4.65 million remittitur. The assessment of $350,000 in punitive damages against Wal-Mart does not adequately punish the company for its conduct. Nor will it serve to deter Wal-Mart or other similarly-situated companies from violating their employees' civil rights. Thus, I respectfully dissent from that portion of the majority opinion that reduces the punitive award to $350,000.

In reviewing the jury's award, the district court properly weighed the relevant aggravating and mitigating factors. The majority contends that the district court failed to consider any mitigating circumstances. In fact, after weighing the evidence, the district court concluded that there were none to consider. The majority points to two mitigating factors: that Wal-Mart had a corporate policy against discrimination and that no one outside the Warsaw store was made aware of the incidents occurring there. The district court explicitly recognized that Wal-Mart had a written "open-door" policy. The mere existence of a policy carries very little weight, however, when Wal-Mart failed to train any of its supervisors about the policy. Moreover, the fact that no one outside of the Warsaw store was aware of the conduct is further evidence that the open-door policy was not followed and that the proper channels of communications were closed tight. Wal-Mart's trial strategy--minimizing and denying the alleged harassment and

relying on the policy to excuse any harassment--as well as its failure to take any affirmative actions against either Mais or Brewer obviously backfired with the jury. Such behavior may well have indicated a greater need for a severe punitive award to compel Wal-Mart to take stronger steps to fulfill its legal obligations toward its employees. See Hurley v. Atlantic City Police Dept., 933 F. Supp. 396, 422 (D. N.J. 1996). Thus, I do not believe that the district court abused its discretion in concluding that there were no mitigating factors worth consideration.

The majority also states that the district court should have further reduced the award because the defendants' conduct was not the most egregious type of sexual harassment. Although it is true that the conduct did not involve serious sexual assault, physical touching, quid pro quo harassment, or retaliation, the district court found it significant that the only attempt Wal-Mart made to address Kimzey's complaints was to offer her alternative positions that carried different benefits and hours from her receiving job. This response essentially punished the wrong party and condoned the illegal behavior. I agree with the district court that Wal-Mart's response to Kimzey's complaints elevated the seriousness of the conduct and, in my view, bordered on retaliation.

As the majority recognizes, a great number of aggravating circumstances were present in this case, including management participation in the harassment, the company's failure to train supervisors regarding the sexual harassment policy, and the resultant failure of on-site managers to carry it out. The majority also notes that Wal-Mart's size warrants consideration; yet in my view, the $4.65 million remittitur does not reflect serious consideration of Wal-Mart's total assets. At trial, the evidence demonstrated that in 1995, Wal-Mart had net assets of $32 billion. The majority's reduced award constitutes less than two one-thousands of one percent of Wal-Mart's net worth. Such a minuscule penalty hardly represents more than a slap on the hand for a company of Wal-Mart's size. In purely economic terms, it

would be far more beneficial for Wal-Mart to pay out this size award than to implement a company-wide training program on sexual harassment. The majority's punitive award does not send out a strong message to large companies that sexual harassment will not be tolerated by our court. I cannot agree to the punitive award assessed by the majority.

In addition to my concern with the size of the award, I do not agree with the manner in which it is imposed. Although remittitur is a proper remedy for an excessive verdict, the preferred method is to vacate the award and remand for a new trial on punitive damages unless the plaintiff agrees to a reduced award. See Morrill v. Becton, Dickinson & Co., 747 F.2d 1217, 1225 (8th Cir. 1984); Lee v. Edwards, 101 F.3d 805, 813 (2d Cir. 1996); Continental Trend Resources, Inc. v. Oxy USA, Inc., 101 F.3d 634, 643 (10th Cir. 1996); Atlas Food Sys. & Serv., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587 (4th Cir. 1996); 11 Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 2820 (1995).

Accordingly, I would vacate the district court's punitive award and remand for a new trial unless Kimzey agrees to an award of $2,000,000.

A true copy.

Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT