# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 98-1593/1846

_____

Kathleen Kline, Anne Wedow, and    *
Erma Morgan,    *
   *
       Appellants, and    *
   *
Betty Taylor,    *
   *
       Appellant/Cross-Appellee,    *
   *    Appeals from the United States
      v.    *    District Court for the Western
   *    District of Missouri.
City of Kansas City, Missouri,    *
Fire Department,    *
   *
       Appellee/Cross-Appellant.    *

_____

Submitted:  January 14, 1999

Filed:  May 5, 1999
_____

Before LOKEN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Kathleen Kline, Anne Wedow, Erma Morgan, and Betty Taylor, each of whom was an employee of the Kansas City, Missouri, Fire Department, sued the department under Title VII of the Civil Rights Act of 1964, see 42 U.S.C. §§ 2000e through

2000e-17, and the Missouri Human Rights Act (MHRA), see Mo. Rev. Stat. §§ 213.010-213.139. (Although the named defendant is the Fire Department, we refer to the city as the defendant in this opinion for purposes of simplicity.) All four women claimed that they were disparately treated based on their sex, that they were subjected to a hostile work environment based either on their sex or their race, and that they were retaliated against for filing charges against the city and for opposing Fire Department practices.

The trial court excluded much of the plaintiffs' evidence in limine: No evidence was admitted of acts that occurred prior to 1989, of the experiences of other women employees of the Fire Department, or of alleged discrimination with respect to clothes and facilities. The trial court also granted partial summary judgment against Ms. Wedow and Ms. Morgan, dismissing their disparate treatment and hostile work environment claims.

At trial, Ms. Kline prevailed on part of her disparate treatment claim and on her hostile work environment claim and her retaliation claim. The jury awarded her approximately $47,000 in compensatory damages and $150,000 in punitive damages on her disparate treatment claim, $1 in nominal damages and $100,000 in punitive damages on her hostile work environment claim, and $1 in nominal damages and $50,000 in punitive damages on her retaliation claim. Ms. Taylor prevailed on part of her disparate treatment claim, and the jury awarded her approximately $96,000 in compensatory damages and $100,000 in punitive damages. The jury found for the city on the remaining claims of Ms. Kline and Ms. Taylor, and on the retaliation claims of Ms. Wedow and Ms. Morgan. The trial court subsequently granted the city's motion to vacate the punitive damages awarded to Ms. Kline and Ms. Taylor.

The plaintiffs appeal the evidentiary exclusions noted above, the jury instructions given in light of those exclusions, the summary judgment rulings against Ms. Wedow and Ms. Morgan, and the order vacating the award of punitive damages. The city

cross-appeals, claiming that there was insufficient evidence to support the judgment in favor of Ms. Taylor. We affirm the trial court with respect to the plaintiffs' appeal but reverse the judgment in favor of Ms. Taylor's disparate treatment claim. We remand the case for the entry of appropriate orders.

I.

Employment discrimination claims of the kind involved here are barred if a plaintiff fails to file a timely charge with the appropriate federal or state administrative agency. Evidence of discrimination is ordinarily admissible only with respect to acts within the statutory limitations period preceding the filing of the charges. The plaintiffs in this case, however, sought to admit evidence of events predating the limitations period, maintaining that they could do so because they were complaining of continuing violations.

We have long recognized that a claim may be timely if it is based on an ongoing violation that began before the limitations period began but continued into it, see Ashley v. Boyle's Famous Corned Beef Co., 66 F.3d 164, 167-68 (8th Cir. 1995) (en banc), and that evidence of events "occurring outside the limitations period may ... be admissible ... when the incidents are part of a continuing violation," Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 572 (8th Cir. 1997). A violation is continuing if it consists of " 'an ongoing pattern or practice of discrimination,' " rather than an amalgamation of discrete, isolated instances. Rorie v. United Parcel Service, Inc. 151 F.3d 757, 761 (8th Cir. 1998), quoting Jenson v. Eveleth Taconite Co., 130 F.3d 1287, 1303 (8th Cir. 1997), cert. denied, 118 S. Ct. 2370 (1998) (emphasis omitted).

We have held, moreover, that "[e]ven if a plaintiff is unable to show a continuing violation, ... instances of harassment occurring outside the [limitations] period may be admissible to provide relevant background to later discriminatory acts." Rorie, 151 F.3d at 761. Damages, however, may be recovered only with respect to events that occurred within the limitations period. Ashley, 66 F.3d at 168 ("[r]elief back to the

-3-

beginning of the limitations period strikes a reasonable balance between permitting redress of an ongoing wrong and imposing liability for conduct long past"); see also Kimzey, 107 F.3d at 572-73.

Various of the plaintiffs contend that the trial court misapplied the principles applicable to continuing-violation cases in several ways. We turn first to the trial court's exclusion of evidence about any events that occurred before January 1, 1989 (more than four years before the limitations period began), in relation to Ms. Kline's disparate treatment and hostile work environment claims. (The trial court's order excluding that evidence explicitly declined to do so with respect to Ms. Wedow, Ms. Morgan, and Ms. Taylor, and thus on appeal we consider this issue only with respect to Ms. Kline. See Fed. R. App. P. 10(2), Fed. R. App. P. 28(e)). Ms. Kline asserts that the trial court's cutoff date of January 1, 1989, for evidence on her disparate treatment and hostile work environment claims was arbitrary and that for those claims the trial court should have admitted all evidence concerning her work since she was first hired at the Fire Department.

The city contends that Ms. Kline's offer of proof was insufficient. "An offer of proof serves dual purposes: (1) to inform the [trial] court and opposing counsel of the substance of the excluded evidence, enabling them to take appropriate action; and (2) to provide an appellate court with a record allowing it to determine whether the exclusion was erroneous and whether [the] appellant was prejudiced by the exclusion." Thomas v. Wyrick, 687 F.2d 235, 239 (8th Cir. 1982), cert. denied, 459 U.S. 1175 (1983). Having reviewed the offer of proof that Ms. Kline submitted to the trial court on this issue, we believe that it was adequate to serve both of these purposes. We have not considered the depositions that were cited in the offer of proof at trial but not provided to this court on appeal.

We believe, furthermore, that the trial court properly concluded that no pre-1989 events could be considered part of a continuing violation relevant to Ms. Kline's

disparate treatment claim. Two of those events involved discipline that Ms. Kline received in 1977, but because of the time lapse between 1977 and 1989, the trial court quite correctly found that the 1977 events involved isolated acts that were not part of a continuing violation. The remaining incident occurred in 1986 and concerned an injury that Ms. Kline was told to ignore. We agree with the trial court that that incident was also merely an isolated act. Even if the trial court erroneously excluded the 1986 event, moreover, the error is harmless. Because Ms. Kline could recover only for incidents that occurred within the limitations period, the 1986 event could have been used only as background evidence and, in our view, is highly unlikely to have affected the verdict of the jury on Ms. Kline's disparate treatment claim.

As for Ms. Kline's hostile work environment claim, however, we believe that the trial court should have allowed evidence of pre-1989 events. In her offer of proof on this issue, Ms. Kline provided evidence of a consistent chain of discriminatory acts and working conditions that were sufficient to constitute a continuing violation that began prior to 1989. The trial court should therefore have admitted that evidence as "relevant background," Kimzey, 107 F.3d at 573, at the very least. Ms. Kline prevailed on the issue of liability on this claim, however, so the only harm she could have suffered from the exclusion of this evidence would be with respect to damages. In this circuit, though, damages may not be predicated on events that occur prior to the limitations period. See id. at 572-73; Gipson v. KAS Snacktime Co., 83 F.3d 225, 230 (8th Cir. 1996); and Ashley, 66 F.3d at 168. The error was therefore harmless.

Ms. Wedow and Ms. Morgan assert that the trial court improperly failed to consider events occurring outside the statutory limitations period when it granted summary judgment to the city on their hostile work environment claims. It is clear from the face of the trial court's orders granting summary judgment, however, that it did in fact consider such evidence, along with events that occurred within the statutory period. The trial court determined that the events in question involved isolated acts rather than

parts of a continuing violation. We believe that the trial court was correct in its conclusion.

Ms. Wedow's hostile work environment claim was based on a series of events that ended in 1986 and on individual incidents that occurred in 1989 and 1993. The trial court determined that these were isolated incidents that did not amount to a continuing violation. Given the length of time that transpired between these three acts, we affirm this ruling. Ms. Morgan's hostile work environment claim was based on a series of acts that ended in 1981, subsequent acts that caused her to accept a voluntary demotion in 1987, and acts that occurred several years later. The trial court found that all these acts were isolated rather than parts of a continuing violation. We agree.

Ms. Wedow and Ms. Morgan further contend that all of this evidence should have been considered "relevant background," Kimzey, 107 F.3d at 573, quite apart from any role as evidence of a continuing violation. We disagree. The evidence in question involved isolated acts that occurred several years before the limitations period began; those acts thus had little or no probative value but did present a substantial risk of confusion of the issues and unfair prejudice. See Fed. R. Evid. 402, Fed. R. Evid. 403. In our view, if that evidence had been admitted, an appreciable risk would have existed that the jury would award damages because of acts for which the statute of limitations had run, or that the jury would confuse the relevant acts with continuing violations.

II.

In a related vein, Ms. Kline, Ms. Wedow, and Ms. Morgan contend that the trial court erred in instructing the jury that liability and damages on any claim could be predicated only on acts that took place within the limitations period. As noted above, our cases are clear that a plaintiff may be compensated only for such acts. See Kimzey, 107 F.3d at 572-73; Gipson, 83 F.3d at 230; and Ashley, 66 F.3d at 168. The plaintiffs argue, nonetheless, that Ashley and the cases applying its principles have recently been

contradicted by Jenson, 130 F.3d at 1287, because, according to the plaintiffs' brief on appeal, "in Ashley it is clear that the plaintiff was limited to recovering to the beginning of the limitation period while in Jenson it is clear that relief is predicated on acts that predated the statute of limitations period."

Plaintiffs have misread the cases. The Jenson opinion held only that the decision about liability (whether or not a plaintiff will recover) could be based partially on time-barred events, not that a plaintiff could actually recover damages for those events. See Jenson, 130 F.3d 1302-03. Damages are not thus "predicated on" time-barred events as plaintiffs contend. The cases are not, therefore, in conflict, and the instructions limiting the recovery of damages to events that happened within the limitations period were therefore correct. See Gipson v. KAS Snacktime Co., 1999 WL 153038, *1 & *6 n.3 (8th Cir. Mar. 12, 1999).

Ms. Kline, Ms. Wedow, and Ms. Morgan challenge the jury instructions on the disparate treatment and retaliation claims. The plaintiffs maintain that the instructions improperly directed the jury to find for the plaintiffs only if disparate treatment or retaliation took place during the statutory limitations period.

The disparate treatment claims were pleaded as continuing violations but relied on discrete acts of discrimination within the limitations period. Evidence from outside that period was therefore admissible as "relevant background," Kimzey, 107 F.3d at 573, but could not be the basis for liability on the disparate treatment claims unless the disparate treatment occurred during the limitations period. That is what the instructions in question required. The benefit of a continuing-violation theory in suits that rely on discrete acts is that a plaintiff may "challenge ongoing discriminatory acts even if similar illegal acts could have been challenged earlier and are thus time-barred," Ashley, 66 F.3d at 168, not that defendants may be held liable for acts outside the limitations period. The challenged instructions were thus not erroneous.

With respect to the retaliation claims, no continuing violation was pleaded. Those claims thus had to have been based on discrete acts within the limitations period. The relevant instructions could not therefore have been infirm on account of any consideration related to a continuing-violation theory, and, accordingly, the trial court properly instructed the jury that liability for retaliation could be based only on acts that occurred during the limitations period.

An instruction relevant to the defendant's liability on Ms. Kline's hostile work environment claim was, however, erroneous. That instruction directed the jury to find for Ms. Kline if conduct occurring within the limitations period met the criteria for a hostile work environment. But when, as here, some of the unlawful acts could establish a continuing violation, a jury need not find that conduct only within the limitations period established the defendant's liability on a hostile work environment claim. Instead, the jury may base part of its determination that a hostile environment existed on evidence of events outside the limitations period, as long as the violation continued into that period and included at least one unlawful act during that period. See id. at 1303. The trial court therefore erred in instructing the jury on Ms. Kline's hostile work environment claim.

We believe nevertheless that the error was harmless. Because the trial court granted summary judgment to the city on the hostile work environment claims of Ms. Wedow and Ms. Morgan, the offending instruction applied only to the hostile work environment claims of Ms. Kline and Ms. Taylor. Ms. Kline prevailed on her hostile work environment claim, and Ms. Taylor does not argue that this instruction was erroneous. Furthermore, although Ms. Kline also contends that the instruction prejudiced her with respect to damages, we disagree, because even in a continuing violation, damages may not be awarded for acts that are time-barred.

III.

The plaintiffs also contend that the trial court should have admitted evidence of discrimination that other women suffered at the Fire Department. We note initially that the trial court did in fact admit evidence tending to show that the city employees who allegedly discriminated against the plaintiffs also discriminated against other women. The trial court admitted that evidence under Fed. R. Evid. 404(b) because it was relevant with respect to the defendant's knowledge of unlawful conduct toward the plaintiffs and its refusal to remedy it. With respect to other employees of the Fire Department, however, we fail to see how evidence of any discrimination by them against women other than the plaintiffs would tend to prove that the plaintiffs were discriminated against. See Fed. R. Evid. 402. Any probative value of this evidence, moreover, would be substantially outweighed by the threat of confusion of the issues and unfair prejudice. See Fed. R. Evid. 403; see also Callanan v. Runyun, 75 F.3d 1293, 1298 (8th Cir. 1996) (upholding a similar exclusion).

Ms. Kline, Ms. Wedow, and Ms. Morgan assert that evidence about employees other than those who allegedly discriminated against them should have been admitted as relevant to motive, opportunity, intent, or knowledge on the part of the city. See Fed. R. Evid. 404(b). We agree with the trial court that the acts of people who did not supervise or allegedly discriminate against the plaintiffs (and who in most cases did not even work in the same area as the plaintiffs) are not probative of the city's motive, opportunity, intent, or knowledge. What little probative value such evidence might have, in any case, would be substantially outweighed by the threat of confusion of the issues and unfair prejudice. See Fed. R. Evid. 403.

IV.

Finally, Ms. Kline, Ms. Wedow, and Ms. Taylor contend that the trial court should have admitted evidence of discrimination with respect to clothing and facilities as relevant to their hostile work environment claims. We agree.

-9-

The EEOC complaint did allege a hostile work environment, and although it did not specifically recite the excluded evidence in support of that claim, the law does not restrict a plaintiff at trial to the evidence recited in an EEOC complaint. "In a hostile work environment claim, evidence concerning all circumstances of the complainant's employment must be considered." Kimzey, 107 F.3d at 573. The treatment of the plaintiffs with respect to clothing and facilities was a part of their work environment and therefore should have been considered in evaluating their hostile work environment claims.

We believe, however, that the error was harmless. With regard to Ms. Kline, we observe first that she prevailed on the issue of liability with respect to her hostile work environment claim. The only harm that she could have suffered from the exclusion of the clothing and facilities evidence, therefore, would have been relevant to damages. Pursuant to a jury instruction that directed the jury to award Ms. Kline nominal damages if it found in her favor on liability but decided that her injuries had no monetary value, the jury awarded her only nominal damages ($1). The acts that led to this award included numerous unwanted sexual advances and insults. The evidence that Ms. Kline contends should have been admitted concerned the poorly fitting clothing, the failure of supervisors to respond to requests to buy firefighting clothing designed for women, unequal bathroom facilities, and the lack of privacy in the bathrooms. Those alleged conditions were manifestly less severe and pervasive than the ones for which Ms. Kline prevailed on liability, and we thus believe that the jury would have declined to award any additional damages for them. The only potential harm to Ms. Kline, therefore, would be in the calculation of punitive damages. Since the trial court vacated the award of punitive damages, however (a ruling that we affirm below), any error here was harmless.

The trial court correctly found in its summary judgment order that Ms. Wedow's hostile work environment claim was based on only one act but that there was no evidence from which a jury could conclude that Ms. Wedow's supervisors were aware

of that act. Only the clothing and facilities evidence would have remained, therefore, even if considered, to defeat summary judgment on Ms. Wedow's hostile work environment claim. That evidence concerned poorly fitting clothing, the lack of firefighting clothing designed for women, deficient bathroom facilities for women (there was no shower), and the lack of privacy in the bathrooms and the bunk area. Ms. Wedow's claim could have survived summary judgment only if these conditions were "sufficiently severe or pervasive 'to alter the conditions of [the plaintiff's] employment and create an abusive working environment.' " Meritor Savings Bank v. Vinson, 477 U.S. 57, 67 (1986), quoting Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982).

We do not believe that the evidence on clothing and facilities was sufficient to carry that burden. It does not tend to prove the level of severity that we have previously found necessary to sustain claims of this sort. For example, in Rorie, 151 F.3d at 762, we found that the facts that the plaintiff alleged were "on the borderline of those sufficient to support a claim," where those facts consisted of the plaintiff's supervisor frequently brushing up against her, telling her that she smelled good, and patting her on the back. We think that those allegations were more serious than the general discomfort that Ms. Wedow alleged with respect to clothing and facilities, and we therefore believe that even if the evidence on clothing and facilities had been considered, Ms. Wedow's hostile work environment claim could not have survived summary judgment. Any error in excluding that evidence was therefore harmless.

It is unclear to us whether Ms. Taylor appeals on this issue. We doubt, however, that the admission of the clothing and facilities evidence would have bolstered her claim in any event. Unlike Ms. Kline and Ms. Wedow, who were firefighters and often had to wear firefighting clothing, and spend nights and take showers at the fire station, Ms. Taylor was a clerical worker. The conditions of which Ms. Kline and Ms. Wedow complain in their hostile work environment claims were altogether irrelevant to Ms. Taylor's work environment (in fact, there is no evidence that she was even subject

-11-

to these conditions). Any error in this regard was therefore harmless with respect to her as well.

V.

Ms. Kline and Ms. Taylor also contest the trial court's order vacating the jury's award of punitive damages under the MHRA. They maintain that the city failed to raise and properly preserve this issue at trial because the city made no motion for judgment as a matter of law with respect to punitive damages. See Fed. R. Civ. P. 50(a)(1). That rule, however, governs motions for judgment as a matter of law based on insufficient evidence and is therefore irrelevant in this context. The city objected to punitive damages at trial on the ground that the statute does not authorize them (not that insufficient evidence existed to support such an award) and objected to the jury instruction on punitive damages, see Fed. R. Civ. P. 51, and therefore raised and properly preserved the issue.

We believe that the trial court was correct in vacating the punitive damages awards. Because the burden of a punitive damages award against a municipality ultimately falls on the taxpayers, and thus will fail to deter future harmful activity by the municipality itself, punitive damages are not usually recoverable against a municipality in Missouri. See Chappell v. City of Springfield, 423 S.W.2d 810, 814-15 (Mo. 1968) and Angelo v. City of Hazelwood, 810 S.W.2d 706, 707 (Mo. App. 1991). A municipality in Missouri is subject to punitive damages only if a statute specifically provides that it is. See, e.g., id. at 813-14.

Ms. Kline and Ms. Taylor argue that the MHRA does in fact specifically provide for punitive damages against municipalities, because the act's definition of "employer" "includes the state, or any political or civil subdivision thereof," see Mo. Rev. Stat. § 213.010(7), and because another section of the act provides that a court may award punitive damages to a prevailing party, see Mo. Rev. Stat. § 213.111.2. But the MHRA is a voluminous statute with many provisions and definitions. See Mo. Rev.

-12-

Stat. § 213.010-213.139. We believe that a result cobbled together from different sections of the statute is insufficiently explicit under the Missouri cases to overcome the presumption against punitive damages when a municipality is a defendant that has been found liable. We therefore reject the plaintiffs' contentions in this respect.

## VI.

The city cross-appeals the judgment entered in favor of Ms. Taylor on her disparate treatment claim, arguing that there was insufficient evidence of intentional discrimination. Ms. Taylor responds that the city failed to preserve this issue for appeal because the city did not renew the motion for judgment as a matter of law, see Fed. R. Civ. P. 50(b), that it made at the close of the plaintiffs' evidence, see Fed. R. Civ. P. 50(a). She cites Pulla v. Amoco Oil Co., 72 F.3d 648 (8th Cir. 1995), for the proposition that a party that fails to move for judgment as a matter of law at the close of all of the evidence is barred by Fed. R. Civ. P. 50(b) from arguing the sufficiency of the evidence post-trial or on appeal.

That case is inapplicable here. First of all, in Pulla, 72 F.3d at 655-56, the appellant failed to make any motion for judgment as a matter of law prior to submission of the case to the jury. It is not even contended that that is the case here. Instead, it is the form of the motion that Ms. Taylor contests. She asserts that, although the city made both oral and written motions for judgment as a matter of law at the close of the plaintiffs' evidence, it "merely renewed them" at the close of its own evidence and again at the close of all of the evidence.

Ms. Taylor argues that these renewals did not satisfy the rule's requirement that motions specify the grounds on which the moving party is relying. See Fed. R. Civ. P. 50(a)(2). We disagree. Once a sufficient motion for judgment as a matter of law has been made, nothing in the law requires the movant continually to make arguments or to file written motions repeating the details of the original over and over again. We

believe that it is sufficient for the movant, as the city did here, simply to renew the motion generically.

The city's substantive argument is that its motion for judgment as a matter of law should have been granted because Ms. Taylor failed to present sufficient evidence of intentional discrimination. Ms. Taylor's theory of the case throughout the trial was that she was treated differently from similarly situated men. The city contends that she did not prove disparate treatment because the males to whom she compared herself were not, in fact, similarly situated to her.

Ms. Taylor bore the burden of proving that she and the male employees to whom she compared herself at trial were " 'similarly situated in all relevant respects,' " Smith v. Monsanto Chemical Co., 770 F.2d 719, 723 (8th Cir. 1985), cert. denied, 475 U.S. 1050 (1986), quoting Meyers v. Ford Motor Co., 659 F.2d 91, 93 (8th Cir. 1981). Ms. Taylor, a clerical employee, was accused of poor job performance. The three men to whom she claims she was similarly situated were J.W.S. (a fire inspector), P.C. (a firefighter), and L.G. (a fire dispatcher), each of whom was accused of specific rule violations. We have held that employees accused of poor job performance are not similarly situated to employees accused of misconduct. Boner v. Board of Commissioners, 674 F.2d 693, 697 (8th Cir. 1982) (plaintiff's poor job performance not similar to misconduct in the form of embezzlement).

J.W.S. was verbally abusive to an employee of the city Finance Department while on duty, and was involved in an altercation with a security guard (for which he was charged with assault) while in uniform and off duty. His supervisor charged him with violations of the personnel rules and of the Fire Department Rules and suspended him until the assault case was decided. After the suspension, J.W.S. was told that he could either resign or face charges for verbal abuse. P.C. was charged with sleeping on the job and violating the fire code by bringing his vehicle inside a building when acting as a fire guard at an event. His supervisor removed his overtime card from the

fire guard box (the card was later returned because it had not been made clear that bringing a vehicle inside the building was a violation). L.G., who served under a different supervisor and in a different facility from Ms. Taylor, had his pay docked for reading another worker's e-mail.

The performance-related matters for which Ms. Taylor was terminated (inadequate typing skills, mistakes in correspondence, and poor time management, among others) are not similar to the specific instances of misconduct described above. Ms. Taylor offered no evidence to demonstrate that she was treated differently from these men, or any other men, with respect to job performance. She was not, therefore, similarly situated to these men in all relevant respects, and the verdict in her favor cannot stand.

## VII.

For the reasons stated, we affirm the judgment of the trial court in all respects on the plaintiffs' appeal but reverse the judgment in favor of Ms. Taylor's disparate treatment claim. We remand the case for the entry of appropriate orders.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-15-