**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-3137
_____

| | | |
|---|---|---|
| Lazelle Michaelis, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States District |
| CBS, Inc., a New York Corporation, | * | Court for the District of Minnesota. |
| | * | |
| Appellee, | * | |
| | * | |
| WCCO Television, Inc., | * | |
| | * | |
| Defendant. | * | |

_____

Submitted: March 13, 1997
Filed: July 11, 1997
_____

Before WOLLMAN and BEAM, Circuit Judges, and REASONER,[1] District Judge.
_____

BEAM, Circuit Judge.

In this defamation action, Dr. Lazelle Michaelis appeals the district court's orders granting summary judgment in favor of CBS, Inc. and its affiliate WCCO Television, Inc. (WCCO). We affirm in part and reverse in part.

_____

[1]The Honorable Stephen M. Reasoner, Chief United States District Judge for the Eastern District of Arkansas, sitting by designation.

## I. BACKGROUND

Plaintiff Michaelis, a medical doctor, is board certified in anatomical pathology, clinical pathology, and immune hematology. She is board eligible, although not board certified, in forensic pathology. At the time the events relevant to this action took place, she was the coroner of Otter Tail County, Minnesota, and was also employed by Orandi Medical, P.A., a private medical association. Through her work for Orandi Medical, Michaelis sometimes performed autopsies for the Becker County Coroner, Dr. Watson, on an as-needed basis. Defendants CBS and WCCO[2] are engaged in the business of television broadcasting.

Through a referral to Orandi Medical from Dr. Watson, Michaelis performed an autopsy on Lori Jensen. Jensen, a young woman from Detroit Lakes, Minnesota, was found dead in her car in her garage. Although her demise was deemed a suicide by carbon monoxide poisoning, Jensen's family members doubted that conclusion and criticized the investigation of her death. Defendants CBS and WCCO broadcast a news report, on August 28 and 29, 1993, which was critical of both the investigation and many of the officials involved, including Michaelis. It is this report that forms the basis for this action.

Michaelis sued CBS and WCCO for defamation. Her complaint alleged that three statements in the report were defamatory. The following excerpts from the report include, in underlined text, those three statements.

---

[2]CBS is organized under the laws of the State of New York and has its principal place of business there. WCCO is a wholly owned and operated division of CBS; it is not incorporated in any state and is not a legal entity separate from its existence as a CBS station.

Statement One:

> So many questions. Why would Lori, who was in good spirits, even planning for a new job before she died, climb into this car and commit suicide some twenty-four hours later? Why didn't she leave a suicide note for her husband Ron, no message for Chelsea, the two-year old she adored? How did Lori break her nose without breaking these glasses, found beside her in the car? Why was she wearing only one shoe? <u>Why was the death certificate signed and marked "suicide" and then filed when the case was still under investigation?</u> Why was nothing in this garage fingerprinted, the scene not cordoned off to protect evidence?

Statement Two:

> The pathologist who performed Lori Jensen's autopsy works here at the regional hospital in Fergus Falls. We checked, she is not a board certified forensic pathologist. <u>We tried to talk with the doctor about her qualifications to handle a suspicious case like this one. She hung up on us. Twice.</u>

Statement Three:

> <u>And WCCO has learned that Dr. Dorothy Michaelis was once sued in Keokuk, Iowa, after she reportedly changed the cause of death in a suspicious case there, apparently admitting she deviated from normal autopsy procedures.</u> We also spoke with the Doctor's former supervisor, who told us "I fired her because we had serious reservations about her ability. She jumped to conclusions, was very temperamental and refused to listen, to admit mistakes."

Defendants moved for summary judgment, which the district court, sitting in diversity, granted as to statements one and three. The district court found that statement one was not actionable as a matter of law as it did not state a false defamatory fact about the plaintiff. The district court found that statement three was subject to a qualified privilege for reporting public proceedings. The defendants then

filed a second motion for summary judgment as to the remaining statement, statement two. The district court granted the motion, finding that Michaelis was a public official and that she had failed to prove the statement was made with malice, as required by New York Times Company v. Sullivan, 376 U.S. 254, 279-80 (1964). Michaelis appeals.

## II. DISCUSSION

Summary judgment is proper only when no genuine issue of material fact is present and judgment should be awarded to the movant as a matter of law. Plough v. West Des Moines Community Sch. Dist., 70 F.3d 512, 514 (8th Cir. 1995). It should not be granted unless the moving party establishes the right to a judgment "'with such clarity as to leave no room for controversy.'" Id. (quoting Jewson v. Mayo Clinic, 691 F.2d 405, 408 (8th Cir. 1982)). We review the district court's entry of summary judgment de novo, giving the nonmoving party the benefit of every inference drawn from the evidence. Plough, 70 F.3d at 514.

In order to prove a defamation claim under Minnesota law, Michaelis must show: (1) the defendants published or communicated a statement about her to a third person; (2) the statement was false; and (3) the statement tended to harm her reputation and lower her in the estimation of the community. O'Brien v. A.B.P. Midwest, Inc., 814 F. Supp. 766, 772 (D. Minn. 1992) (citing Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 255 (Minn. 1980)). In determining whether a particular statement is defamatory, a court must review the statement in the context in which it was presented, give the words their obvious and natural meaning, and consider the innuendos which follow from the statement. Jadwin v. Minneapolis Star and Tribune, Co., 390 N.W.2d 437, 442 (Minn. Ct. App. 1986). If words are reasonably capable of carrying a defamatory meaning, the determination as to whether the communication was in fact defamatory is for the jury. Conroy v. Kilzer, 789 F. Supp. 1457, 1462 (D. Minn. 1992).

In addition to the standard elements of defamation, however, a public official plaintiff must allege facts from which a jury could find that the speaker acted with actual malice in making the defamatory statement. New York Times, 376 U.S. at 279-80. To show actual malice, a public official must show that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for its truth. Gertz v. Robert Welch, Inc., 418 U.S. 323, 342 (1974). Applying these standards, we find that the district court correctly granted summary judgment as to statements one and three, but not as to statement two.

## A.  Statement One--The Signed Death Certificate

In order for a statement to be defamatory, it must assert a defamatory fact against the plaintiff. Covey v. Detroit Lakes Printing Co., 490 N.W.2d 138, 143 (Minn. Ct. App. 1992). Statement one, however, did not refer to Michaelis. The report did not claim that Michaelis signed the death certificate. Indeed, the report as a whole made clear that Dr. Watson, the Becker County Coroner, was in charge of assigning the cause of death in Jensen's case. Because, in the context of the entire report, it was clear that this statement did not refer to Michaelis, the district court correctly granted defendants summary judgment on this issue.

## B.  Statement Three--The Prior Lawsuit

Minnesota law recognizes a qualified privilege for the media in reporting public proceedings. Schuster v. U.S. News & World Report, Inc., 459 F. Supp. 973, 978 (D. Minn. 1978). A statement about a judicial proceeding will be privileged as long as it is a "fair and accurate" report of that proceeding. Jadwin, 390 N.W.2d at 441. Statement three, including the reference to the prior lawsuit, the altered death certificate and the deviation from normal procedures, was substantially true. The defendants submitted copies of Iowa newspaper articles and Michaelis's own deposition testimony from that case to prove the accuracy of the statement.

Michaelis concedes that she was sued in the Keokuk case and that she had previously admitted deviating from her normal procedure in signing the death certificate in that case. However, she claims that statement three is nevertheless inaccurate and, therefore, not privileged. She argues that: (1) not following her own normal procedure in preparing the Keokuk death certificate is markedly different than deviating from normal autopsy procedures, as reported by the broadcast; (2) she was sued in her official, not individual, capacity in the earlier suit, contrary to the implication in statement three; and (3) defendants did not prove that the reporter relied on the judicial proceeding when he broadcast the statement. These arguments are without merit. The statement is privileged because it constituted a "fair and accurate" summary of the prior proceeding. Id. Even the cumulative effect of these alleged discrepancies fails to render the statement substantially inaccurate. Furthermore, Minnesota law does not require a showing of actual reliance on the records of the prior proceeding before the privilege attaches. Therefore, we find that the district court correctly granted summary judgment as to this statement.

### C. Statement Two--The Phone Call Hang Ups and Qualifications

Statement two poses a more difficult question. Initially, we note that in light of our recent decision in Toney v. WCCO Television, we have no difficulty stating, contrary to defendants' assertions, that defamation by implication is a viable cause of action in Minnesota. 85 F.3d 383, 394 (8th Cir. 1996). One form of defamation by implication is the omission of facts. Id. at 395. Another form is the juxtaposition of facts so as to imply a defamatory connection between them. Id. In an implied defamation case, a defendant does not avoid liability by simply establishing the truth of the individual statement. Instead, the defendant must also defend the juxtaposition of the two statements or the omission of certain facts.

As the district court found, statement two is susceptible of a defamatory meaning toward Michaelis. "It is specifically directed to her professional credentials, is

-6-

juxtaposed to a description of a lawsuit against her relating to the performance of her professional duties and of problems she had in her past professional employment, and [is] presented in the larger context of criticizing the competency of the persons investigating Lori Jensen's death." Michaelis v. CBS, Inc., Civ. No. 3-95-374, Mem. Op. at 10 (D. Minn. Aug. 8, 1995). Considering statement two in conjunction with the context and tenor of the entire report, a jury could conclude that Michaelis was evading the reporter because she was neither qualified to handle the Jensen autopsy nor professional in her investigation of Jensen's death. These are defamatory implications which could injure Michaelis's professional reputation.[3]

Having concluded that statement two was capable of a defamatory meaning, we must consider which constitutional standards apply to Michaelis's defamation claims. Our discussion begins with the district court's finding that Michaelis was a public official. Defendants bear the burden on this issue. See Wolston v. Reader's Digest Ass'n, Inc., 443 U.S. 157, 167-68 (1979). The court's determination of Michaelis's public official status is a question of federal law, which we review de novo. Rosenblatt v. Baer, 383 U.S. 75, 84, 88 (1966).

The Supreme Court has not determined how far down the ranks of government employees public officials may be found, New York Times, 376 U.S. at 283 n.23, but has stated that public official status cannot extend to all public employees. Hutchinson v. Proxmire, 443 U.S. 111, 119 n.8 (1979). At the very least, however, public official

---

[3]Furthermore, statement two tells the listener that Michaelis hung up on the reporter, clearly implying that no conversation had taken place. This is simply untrue. Indeed, as the record clearly demonstrates, the reporter engaged in two phone conversations with Michaelis, one for eight minutes and another for roughly five minutes. During these conversations, the reporter continually pressed Michaelis for information which she was uncomfortable giving out. Michaelis referred the reporter to the county coroner, Dr. Watson, and let the reporter know that Dr. Watson could more fully comment on the case. The omission of these facts could be found by a reasonable jury to be sufficiently defamatory so as to support liability.

status applies to "those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." Rosenblatt, 383 U.S. at 85. On the facts of this case, defendants not only failed to show that Michaelis was acting in her capacity as a government employee, but also that she was a hierarchical member of that group, with substantial control over governmental affairs.

Although Michaelis was the official Otter Tail County Coroner, she did not act in that capacity in this case, which arose out of events in Becker County. The record is replete with references to Michaelis as a hospital pathologist, not as the coroner of any given county. Indeed, Michaelis held no position of government employment with respect to Becker County, where the Jensen death occurred. She was neither the Becker County Coroner nor a duly appointed deputy coroner or medical examiner. She served merely as a private physician, to whom Dr. Watson occasionally referred autopsies. In this instance, she was employed by and paid by Orandi Medical, P.A. In light of this fact, Michaelis's Otter Tail County position was of little relevance. Even if Michaelis was found to be a public employee for purposes of this case, however, defendants failed to show that she had substantial responsibility for or control over governmental affairs.

As the record shows, Michaelis had a rather limited role in the Jensen case, serving under the control of Dr. Watson. Although Minnesota statutes entrust county coroners and duly appointed medical examiners with certain powers and duties, defendants failed to show that Michaelis could exercise any of those powers in her capacity in this case.[4] Indeed, the record more appropriately supports the conclusion

---

[4]Minnesota statutes delineate the powers and duties of county coroners, see, e.g., Minn. Stat. §§ 390.04; 390.15, and provide for the appointment of deputy coroners and medical examiners, with similar powers and duties. See, e.g., Minn. Stat. §§ 390.05; 390.33. However, as Michaelis's deposition testimony showed, she did not occupy any

that Dr. Watson simply enlisted the services of another pathologist, Michaelis, as was his option under state law.  See Minn. Stat. § 390.11 subd. 4.  These private medical specialists do not have any of the powers of a county coroner.  Without such powers, it is difficult to see how Michaelis could exercise responsibility or control over governmental affairs.

Because defendants failed to establish Michaelis's status as a public official, the district court incorrectly granted summary judgment as to statement two.  Therefore, we remand this case for further proceedings in which the appropriate constitutional standards are applied.  Due to the district court's failure to reach the issue of Michaelis's possible public figure status, see Curtis Publishing Company v. Butts, 388 U.S. 130 (1967), we express no opinion as to that issue.

## III.  CONCLUSION

The district court correctly granted summary judgment as to statements one and three, and we therefore affirm as to those statements.  We reverse the district court's grant of summary judgment as to statement two and remand for further proceedings consistent with this opinion.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

of these positions in Becker County.  This testimony was unrebutted by the defendants.

-9-