# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 98-1552
No. 98-1734

_____

| | | |
|---|---|---|
| Terry Graning, | * | |
| | * | |
| Plaintiff-Appellant/ | * | |
| Cross-Appellee, | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Sherburne County; Bruce Anderson, | * | |
| | * | |
| Defendants-Appellees/ | * | |
| Cross-Appellants. | * | |

_____

Submitted: February 12, 1999
Filed: April 8, 1999

_____

Before MURPHY, LAY, and JOHN R. GIBSON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Terry Graning held an administrative position in the Sherburne County sheriff's department until she was fired by Sheriff Bruce Anderson for breaching the departmental confidentiality policy. Graning alleged that the real reason for her dismissal was her support for Anderson's election opponent and sued both Sheriff Anderson and the county under 42 U.S.C. § 1983 and state law. The district court[1]

_____

[1]The Honorable Paul A. Magnuson, Chief Judge, United States District Court for the District of Minnesota.

granted summary judgment for the defendants on her § 1983 and defamation claims and declined to exercise supplemental jurisdiction over her claim under the Minnesota Data Practices Act. Graning appeals, and we affirm.

Terry Graning was employed by Sherburne County from April 24, 1990 until February 28, 1996. After Sheriff Richard Witschen announced his intention to retire, chief deputy Skip Gerlach and appellee Bruce Anderson, then lieutenant deputy, ran to succeed him. Graning actively supported Gerlach while the majority of the department staff apparently supported Anderson who won the November 1994 election and took office in January 1995. Graning says that the atmosphere in the department was extremely uncomfortable for her following the election. She felt that her relations with Anderson supporters were poor and that the sheriff and others were rude to her. After the election, Graning's supervisor told her that Anderson and his deputies were watching her closely. In the spring of 1995, her lunch schedule was changed and she was told she should no longer lunch with co-worker Gary Poslusny. Poslusny had also supported Gerlach, but there is no indication that Graning asked why the supervisor was concerned about her spending time with Poslusny. Graning felt that the hostility towards her began to improve after a year or so, but she was fired on February 28, 1996, about fourteen months after the election.

The events immediately prior to Graning's dismissal are largely uncontroverted. In February 1996, a confidential informant referred to as Pat Doe contacted the Foley police chief about someone she regarded as an habitual drunk driver who she believed was likely to harm himself and others. Pat Doe indicated that this individual was Larry Neiss and that she was frightened of him and feared her safety could be endangered if he learned she had given this information. The chief relayed the information about Neiss to the Sherburne County sheriff's department and Sheriff Anderson posted a memo on a departmental bulletin board to notify officers that Larry Neiss was suspected of frequently driving while intoxicated. The memo described identifying characteristics of Neiss and vehicles he was known to drive and

2

listed bars he was known to frequent. A copy of his criminal history was also posted next to the memo. The bulletin board was located in a hallway in the non-public area of the office. Although the hallway was a limited access area, prisoners and other non-employees passed through it for various reasons. It is not disputed that Graning knew when she was hired that all items of departmental business were routinely considered to be confidential. Employees were prohibited from sharing such information with outsiders.

Not long after the memo was posted, Sheriff Anderson learned that Neiss had been informed by Dorothy Gilyard that the department was intent on arresting him. The record before the court does not provide much information about Gilyard, but appellees' reply brief in the district court mentioned that Leonard Graning, Terry Graning's husband, had testified that he told Gilyard about the Neiss memo. Sheriff Anderson suspected that Terry Graning was the source of the leak and called her into his office for questioning; Chief Deputy Lindberg and Sergeant Harrell were also present. The sheriff accused Graning of releasing information to Gilyard. Graning denied that, but admitted that she had told her husband that he should be careful or his name would be on the board like that "Weiss or Teiss character." At the conclusion of the interview, the sheriff terminated Graning's employment. Later that day the sheriff posted a notice on the bulletin board advising departmental personnel that Graning would no longer be working there because of a breach of confidentiality.

Graning challenged her dismissal, first through departmental procedures and then in court. She began by filing a grievance with the county director of human resources. After this grievance was rejected and her discharge upheld, Graning turned to the Sherburne County Board of Commissioners. The board heard her case in a contested evidentiary hearing in April 1996. In May it unanimously ruled against her, and she did not seek judicial review of its decision. Instead, she filed this action against Sheriff Anderson and Sherburne County, seeking monetary and injunctive

3

relief under 42 U.S.C. § 1983 and alleging defamation and violation of the Minnesota Data Practices Act. <u>Minn Stat.</u> § 13.01-13.99.

The district court granted defendants' motion for summary judgment on Graning's § 1983 and defamation claims. It reasoned that she had not asserted facts sufficient to support a causal connection between her political affiliation and her termination and that the defendants had accorded her all the process she was due. It concluded there could be no defamation because Graning's admissions established that the contents of the sheriff's memo were true, and it declined to take supplemental jurisdiction over the Minnesota Data Practices Act claim.

On appeal, Graning argues that the district court erred in analyzing her first amendment claims under the framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). She also asserts that her discharge was arbitrary and capricious and thus in violation of her fourteenth amendment due process rights and that there are genuine issues of material fact regarding whether her defamation claim is barred by the defense of truth.[2]

Appellees filed a cross appeal to preserve some alternative grounds on which they might prevail. They assert that Graning's § 1983 claims are subject to dismissal for the county because her alleged injuries were not the result of an official municipal policy and for the sheriff because he is entitled to qualified immunity. They also argue that Graning's defamation claim should be dismissed because Sheriff Anderson

---

[2]Graning also argues that the district court abused its discretion in allowing appellees to file several additional affidavits submitted with their reply brief. After reviewing the affidavits and the context in which they were submitted, we find no abuse of discretion. The additional information was not of critical significance, and affidavits may appropriately be produced with a reply brief when they respond to new issues which have arisen during briefing. <u>Alaska Wildlife Alliance v. Jensen</u>, 108 F.3d 1065, 1068 n.6 (8th Cir. 1997).

4

had a qualified privilege under Minnesota law in posting the statement about Graning's discharge.

Summary judgment is reviewed de novo and upheld only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue of material fact and the moving parties are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1315 (8th Cir. 1996). Summary judgment is not proper if there are genuine disputes over facts that could affect the outcome under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return a verdict for the non-moving party based on the evidence presented in the district court. Id.

Graning seeks relief under 42 U.S.C. § 1983, alleging that appellees violated her first amendment right to political affiliation and her fourteenth amendment due process rights. To establish a § 1983 claim against Sheriff Anderson, Graning must show his conduct deprived her of a constitutional right, privilege, or immunity and that he acted under color of state law. Reeve v. Oliver, 41 F.3d 381, 383 (8th Cir. 1994). To establish a claim against the county, she must further establish that the "decisionmaker possess[ed] final authority to establish municipal policy with respect to the action ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986). There is no issue here about the acting under color of state law requirement, but the parties disagree on whether the sheriff's decision, upheld by the Board of Commissioners, may be fairly said to represent municipal policy and whether any constitutional right was violated.

Graning argues that her first amendment rights were violated because she was fired for supporting Gerlach instead of Anderson in the November 1994 election, but appellees say she was fired for breaching the department's confidentiality policy. A state employee's right to freedom of political affiliation is protected under the first

5

amendment. With the exception of those in policymaking positions, state employees may not be discriminated against because of their political affiliation. Elrod v. Burns, 427 U.S. 347 (1976); Billingsley v. St. Louis County, 70 F.3d 61, 63 (8th Cir. 1995). To establish a prima facie case of discrimination, the complainant must show that she participated in a protected activity, that an adverse employment action was taken against her, and that there was a causal connection between the protected activity and the adverse employment action. Stevens v. St. Louis Univ. Medical Center, 97 F.3d 268, 270 (8th Cir. 1996). Once a prima facie case has been stated, the burden shifts to the employer to articulate a non-discriminatory reason for the adverse employment action. The employee has an opportunity to prove that the reason given is pretextual.[3] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).

To support her allegation of discrimination, Graning has produced evidence that a supervisor indicated to her after the election that Anderson and his supporters were watching her, that she was told not to continue to lunch and socialize with Gary Poslusny, that she did not receive flowers on secretaries day in 1995, and that some of her work assignments changed, although they were not necessarily worse. She also

_____

[3]Graning argues that her claim should either be analyzed under Mt. Healthy City Sch. Dist. Bd. of Educ., 429 U.S. 274 (1977), rather than under the McDonnell Douglas framework, or that she be permitted to go to trial under alternative theories. The so-called mixed motive analysis under Mt. Healthy is only used if a complainant has comes forward with "'evidence that directly reflects the use of an illegitimate criterion in the challenged decision.'" Carroll v. United States Dep't of Labor, 78 F.3d 352, 357 (8th Cir. 1996) (citation omitted). Once it is shown that protected conduct was at least part of the reason for the adverse employment action, the burden shifts to the employer to establish that the employee would have been fired even if she had not engaged in the protected conduct. Mt. Healthy, 429 U.S. at 287. Graning has not produced evidence to show that she was terminated because of her political activity so the district court did not err in applying the McDonnell Douglas analysis. After our review of the record, we conclude that Graning has failed to establish a prima facie case under either test.

6

asserts that the severity of the sanction and the sheriff's failure to consider lesser options are evidence of discrimination. Graning admits, however, that she has not proven that Anderson even knew she had supported Gerlach in the election. She also has not shown, by affidavit or otherwise, that Anderson was aware of the political affiliation of people in the department, that anyone was given less severe sanctions for similar violations, or that negative attitudes of co-workers about her were related to her political affiliation.

Graning's termination came some fourteen months after the contested election and immediately after her admitted violation of the confidentiality policy of a law enforcement agency. Graning acknowledges that she knew that the posted memo was departmental business, that she knew all departmental business was to be kept confidential, and that she did disclose information from the memo to her husband. Although Graning can show she supported Gerlach in the 1994 election, she has not provided facts sufficient to support a finding that there was a causal connection between that activity and her dismissal. A non-moving party may not avoid summary judgment by resting on allegations, but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The district court did not err in granting summary judgment for both Anderson and the county[4] on her first amendment claim.

Graning also seeks relief under § 1983 for due process violations. The district court determined that Graning had received all the process she was due and that none of her allegations led to the conclusion that her termination was irrational. On appeal, Graning alleges that the county discharged her in an arbitrary and capricious manner, depriving her of property and liberty interests without due process of law.

_____

[4]Because we find no constitutional right was denied, we need not discuss whether Sheriff Anderson's firing of Graning and the subsequent affirmation of that decision by the Board of Commissioners would amount to municipal policy within the meaning of Pembaur v. City of Cincinnati, 475 U.S. 469 (1986).

A state employee is entitled to a hearing or some related form of due process before being deprived of a constitutionally protected property or liberty interest.[5] See Cleveland Bd of Educ. v. Loudermill, 470 U.S. 532 (1985) (discussing process required to protect state employee's property interest in continued employment); Johnson v. Rogers, 621 F.2d 300, 305 (8th Cir. 1980) (noting that due process procedures are required to protect a public employee terminated under stigmatizing circumstances). A public employee with a protected property interest in continued employment receives due process if there is notice and an opportunity to respond to charges of misconduct before her termination and if posttermination administrative review procedures are available. The pretermination process need not be elaborate, especially if there are meaningful postdeprivation procedures. Loudermill, 470 U.S. at 542-47. A public employee is also entitled to notice and a name-clearing hearing when fired under circumstances imposing a stigma on her professional reputation. Johnson, 621 F.2d at 305 (citations omitted).

Graning was given notice of the reason for her dismissal and an opportunity to respond to the charges, and after her termination she availed herself of departmental grievance procedures in which she was represented by private counsel. She also received an evidentiary hearing in April 1996 before the Sherburne County Board of Commissioners. The board upheld her discharge in May of that year, and she chose not to seek review of that decision in state court. Graning had a meaningful opportunity to challenge her discharge and although she was unsuccessful, her procedural due process rights were adequately protected by the process. See Loudermill, 470 U.S. at 542-47.

To establish a substantive due process claim, Graning must show that the government action was "'truly irrational,' that is, 'something more than . . . arbitrary,

---

[5]No serious issue has been raised as to whether Graning had protected property and liberty interests.

8

capricious, or in violation of state law.'" Anderson v. Douglas County, 4 F.3d 574, 577 (8th Cir. 1993) (citations omitted). Graning knowingly communicated confidential departmental business to her husband, and the spread of this information caused an informant to fear for her safety and could have interfered with the effectiveness of the sheriff's department. Graning has not shown that the decision to terminate her was "truly irrational." The district court did not err in granting summary judgment to the defendants on her due process claims.

Graning further argues the district court erred in granting summary judgment on her claim that Sheriff Anderson defamed her by posting the notice that she had been terminated for violating department policy. Anderson and the county argue the district court correctly determined that there was no defamation because the contents of the memo were true, but Graning claims there are conflicting issues of material fact.

A statement is not defamatory under Minnesota law unless it is communicated to a third party, is false, and tends to harm the plaintiff's reputation in the community. Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 255 (Minn. 1980); see also Michaelis v. CBS, Inc., 119 F.3d 697, 700 (8th Cir. 1997). A true statement cannot be defamatory. Stuempges, 297 N.W.2d at 255; Benson v. Northwest Airlines, 561 N.W.2d 530 (Minn. App. 1997). The posted statement read: "This is to advise all personnel that because of a breach of confidentiality as of Thursday, 02 29 96, Terry Graning will no longer be working with this department . . ." Graning has acknowledged that she disclosed to her husband the contents of a memo involving departmental business. She now challenges the policy of considering all departmental business confidential as inconsistent with the Minnesota Data Practices Act and asserts that there are questions of fact about whether the memo can be considered

confidential because it was posted in an area through which outsiders passed.[6] Graning acknowledges that, at the time of her hire, she was aware that all departmental business was considered confidential. The undisputed facts establish that Graning did breach this policy by disclosing information about the Neiss posting to her husband. She has not alleged facts sufficient to support a finding that the statement regarding her termination was false. The district court did not err in granting summary judgment on Graning's defamation claim.

The district court declined to exercise supplemental jurisdiction over Graning's claim that appellees violated the Minnesota Data Practices Act because all of the federal question claims had been dismissed. The district court may choose not to exercise supplemental jurisdiction over a pendent state claim when it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); Franklin v. Zain, 152 F.3d 783, 786 (8th Cir. 1998). Nonetheless, Graning asserts that the court should have taken jurisdiction over her claim under the Minnesota statute because information relating to it could have been relevant to her other claims. She has not specifically shown, however, how her other claims would have been bolstered, and the district court did not abuse its discretion by declining to exercise supplemental jurisdiction over the Minnesota Data Practices Act claim.

For the reasons discussed above, the judgment of the district court is affirmed, and the cross appeal is dismissed as moot.

---

[6]The fact that outsiders sometimes pass by the bulletin board in the restricted access hallway is insufficient to prevent summary judgment. Graning has not produced evidence that any outsider was in a position to be able to read the Neiss memorandum. In addition, any possible inconsistency between the department's confidentiality policy and the state Data Practices Act would not prove that the reason given for terminating Graning was pretextual.

10

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.