Virgil WILKINSON, Charles Wilkinson, Alva Rose Hall, Wilbur D. Wilkinson, for themselves and as heirs of, Ernest Wilkinson, Mollie Wilkinson, Harry Wilkinson, and Virginia Wilkinson, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. A1–03–02.

United States District Court, D. North Dakota, Southwestern Division.

April 14, 2004.

Thomas J. Gunderson, New Town, ND, for Plaintiffs.

Cameron W. Hayden, U.S. Attorney's Office, Bismarck, ND, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HOVLAND, Chief Judge.

The Plaintiffs allege they have been deprived of the use of rental income derived from land located on the Fort Berthold Reservation. The land has been held in trust for their parents by the United States. On February 2, 2004, the Defendant filed a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Plaintiffs filed a response to the motion on February 25, 2004. For the reasons set forth below, the motion is granted.

## I. BACKGROUND

The plaintiffs, Virgil Wilkinson, Charles Wilkinson, Alva Rose Hall, and Wilbur D. Wilkinson, are the children and heirs of Ernest and Mollie Wilkinson. Ernest and Mollie Wilkinson were enrolled members of the Three Affiliated Tribe and held a possessory interest in four tracts of land located on the Fort Berthold Reservation which land was held in trust for them by the United States. Between 1971 and 1990, Ernest and Mollie Wilkinson ("the Wilkinsons") borrowed money from the Farmers Home Administration and its successor in interest, the Farm Service Agency. To secure these loans, the Wilkinsons mortgaged their interest in the land as allowed under 25 U.S.C. § 483a.[1] In addi-

---

1. 25 U.S.C. § 483a(a) provides:

The individual Indian owners of any land which either is held by the United States in trust for them or is subject to a restriction against alienation imposed by the United States are authorized, subject to approval by the Secretary of the Interior, to execute a mortgage or deed of trust to such land. Such land shall be subject to foreclosure or sale pursuant to the terms of such mortgage or deed of trust in accordance with the laws of the tribe which has jurisdiction over such land or, in the case where no tribal foreclo-

sure law exists, in accordance with the laws of the State or Territory in which the land is located. For the purpose of any foreclosure or sale proceeding the Indian owners shall be regarded as vested with an unrestricted fee simple title to the land, the United States shall not be a necessary party to the proceeding, and any conveyance of the land pursuant to the proceeding shall divest the United States of title to the land. All mortgages and deeds of trust to such land heretofore approved by the Secretary of the Interior are ratified and confirmed.

tion, the Wilkinsons signed standard BIA forms entitled "Assignment of Income from Trust Property" in favor of the Farm Service Agency (FSA). The Bureau of Indian Affairs (BIA) approved the mortgages and the assignments and recorded the mortgages in the Office of the Recorder for McLean County, North Dakota.

The Wilkinsons fell behind on their mortgage payments which prompted the Farm Service Agency to file numerous demand letters with the BIA from January 1980–January 1994. Unsuccessful efforts to exact payment on the mortgage culminated in the BIA's decision in March 1997 to lease the trust land. This decision was later overturned following an appeal to the Department of the Interior's Interior Board of Indian Appeals (IBIA). A more detailed chronology of events is set forth below.

· May 1971—January 1984: Ernest and Mollie Wilkinson ("the Wilkinsons") borrowed money from the Farm Service Agency, successor in interest to the Farmers Home Administration, an agency of the United States Department of Agriculture, as evidenced by seven promissory notes. These promissory notes were secured by real estate mortgages on the Wilkinsons' interests in the trust land. The mortgages were approved by the BIA and recorded in the Office of the Recorder for McLean County, North Dakota.

· January 10, 1990: The Wilkinsons entered into a Shared Appreciation Agreement wherein the Farm Service Agency agreed to write down their debt and restructure their loans as evidenced by three new promissory notes. These promissory notes were secured by real estate mortgages of the Wilkinsons' interests in the trust land. The mortgages were approved by the BIA and recorded in the Office of the Recorder for McLean County, North Dakota.

· January 10, 1990: The Wilkinsons signed an "Assignment of Income from Trust Property" in favor of the Farm Service Agency.

· September 11, 1991: Mollie Wilkinson passed away.

· January 8, 1992: The Farm Service Agency filed a demand letter with the BIA, calling on the BIA to make payment on the Wilkinsons' mortgage under the assignment. The BIA responded by placing a hold in favor of the Farm Service Agency on the Individual Indian Money (IIM) accounts belonging to Ernest Wilkinson and to Mollie Wilkinson's estate.

· October 13, 1993: Mollie Wilkinson's estate was probated by the United States Department of the Interior. Mollie's trust interests were divided amongst Ernest and two of the couple's children, Harry and Virginia, in accordance with Mollie's will.

· August 21, 1994: Harry Wilkinson died intestate at Rochester, Minnesota.

· August 5, 1996: The Farm Service Agency again wrote to the BIA, seeking assistance in collecting on the Wilkinsons's debts.

· February 19, 1997: BIA Superintendent Adeline Brunsell issued notice of the trust lands on the Fort Berthold Reservation that were available for leasing. Included in the notice were the four tracts of land in which Ernest and Virginia Wilkinson had an interest. The notice provided that sealed bids were to be opened on March 19, 1997.

· March 13, 1997: Superintendent Brunsell informed Ernest Wilkinson that a demand letter had been filed against his and his deceased spouse's IIM accounts, and that the trust land that he and his wife had mortgaged to the Farm Service Agency would be leased to the highest bidder. The decision to lease the land was based

upon the assignment in favor of the Farm Service Agency.

· March 18, 1997: Ernest Wilkinson filed objections with the Farm Service Agency and the BIA.

· March 23, 1997: BIA Acting Superintendent Angus Fox informed Ernest Wilkinson that the mortgaged trust land had been leased.

· April 8, 1997: Ernest Wilkinson appealed the BIA's decision to lease the land.

· June 20, 1997: On appeal, the BIA's Acting Area Director, Gerry E. Foell, upheld the superintendent's decision to lease the land "to avoid foreclosure of trust land by [the Farm Service Agency] and to generate income for payment to [the Farm Service Agency]."

· July 14, 1997: Ernest Wilkinson filed a Notice of Appeal with the Department of the Interior's Interior Board of Indian Appeals (IBIA).

·October 9, 1997: The Farm Service Agency sent Notice of Acceleration and Demand for Payment to Ernest and to Mollie's estate.

· November 28, 1997: Ernest Wilkinson passed away. His estate has yet to go though probate and, therefore, remains open.

· July 6, 1998: The IBIA determined that the BIA was not authorized to lease the trust land in order to generate income as per the assignments. Consequently, it reversed the BIA's decision to advertise and lease the trust property in which Ernest Wilkinson possessed an interest. It remanded the question of the holds placed upon the Wilkinsons's IIM accounts to the BIA's Area Director for appropriate consideration. The BIA did not appeal or otherwise directly challenge the IBIA's determination.

· July 31, 1998: On remand from the IBIA, the BIA's Area Director determined that Mollie Wilkinson's heirs could grant leases for the land. The Area Director also determined that the BIA had no authority to place a hold on Ernest's IIM accounts to pay the Farm Service Agency.

· August 31, 1998: Harry Wilkinson's estate was probated. Ernest Wilkinson was deemed to be Harry's sole heir at law.

· November 27, 1998: Virginia Wilkinson passed away.

· March 13, 2000: The Plaintiffs filed a claim against the BIA with the Department of the Interior.

· April 23, 2001: The Department of Interior Field Solicitor denied the Plaintiffs' claim.

· October 18, 2002: The Plaintiffs requested reconsideration of the Field Solicitor's decision to deny their claim.

· July 15, 2002: The Plaintiffs' request for reconsideration was denied.

·August 18, 2003: The Farm Service Agency filed a claim against Ernest Wilkinson's estate for $321,769.79.

·September 30, 2003: Virginia Wilkinson's estate was probated and her interests were divided equally amongst her siblings—Spenser Wilkinson Sr., Leonard Wilkinson, Wilbur Wilkinson, Charles Wilkinson, Virgil Wilkinson, and Alva Rose Wilkinson Hall.

The plaintiffs—Virgil Wilkinson, Charles Wilkinson, Alva Rose Hall, and Wilbur D. Wilkinson—filed a lawsuit against the Defendant on January 2, 2003, pursuant to the Federal Tort Claims Act.[2] Counts One

---

**2.** The Plaintiffs have indicated that, in addition to the above-entitled action, they are participating in a class action discrimination lawsuit filed against the United States Department of Agriculture in Washington D.C. and have filed administrative claims against the United States Department of Agriculture and a number of its officials. See Plaintiffs' Answer to Defendants' Motion for Summary Judgment, pp. 10–11 (Docket No. 25).

and Two of the Plaintiffs' complaint allege the Plaintiffs were deprived of substantive and procedural due process as a result of the intentional, negligent, wrongful and malicious acts of BIA Superintendent Adeline Brunsell and Acting Superintendent Angus Fox. Count Three alleges that Superintendent Brunsell and Acting Superintendent Fox intentionally, negligently, wrongfully, and maliciously committed trespass to and conversion of the Plaintiffs' farm equipment, livestock, trust land, and trust and farm income. Count Four alleges that Superintendent Brunsell and Acting Superintendent Fox failed to implement the IBIA Decision and Order of July 6, 1998, and the BIA Area Director's Order of July 31, 1998. The Plaintiffs essentially contend that the actions of the BIA in renting trust land following default by their parents deprived them of the rental income from the land. The rental payments were deposited into Indian money accounts. A portion of the rental proceeds were paid by the BIA to the Farm Service Agency to reduce the substantial mortgage debt owed by the Wilkinsons. The mortgage debt incurred by the Wilkinsons is currently $321,769.79.

The Defendant contends the BIA was authorized under the terms of the mortgage executed by Ernest and Mollie Wilkinson to lease the trust land. The Defendant contends the land was leased in accordance with all applicable regulations and the lease proceeds were properly distributed to the Farm Service Agency in accordance with the assignment signed by Ernest and Mollie Wilkinson in January 1990. The Defendant also argues that the United States had a valid perfected security interest in the rental payments and that the liens are superior to the rights of the heirs since the mortgage debt of more than $321,000 far exceeds the market value of the property.

On February 6, 2004, the Defendant filed a Motion for Summary Judgment, and contended (1) the Plaintiffs lacked standing to assert any claims under the Federal Tort Claims Act, (2) the alleged violations of federal regulations by an agency of the United States did not establish a state law duty under the Federal Tort Claims Act, (3) federal employees acting within the scope of their employment could not be sued in their individual capacities, and (4) the constitutional claims against the individually named Defendants fail since the Plaintiffs were not deprived of a property right.

## II. STANDARD OF REVIEW

It is well-established that summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Graning v. Sherburne County,* 172 F.3d 611, 614 (8th Cir.1999). A fact is "material" if it might effect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Quick v. Donaldson Co., Inc.,* 90 F.3d 1372, 1376 (8th Cir.1996). The moving party has the initial burden of demonstrating to the Court that there are no genuine issues of material fact. If the moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings. Instead, the non-moving party

must set forth specific facts showing that there are genuine issues for trial. Fed. R.Civ.P. 56(e). A mere trace of evidence supporting the non-movant's position is insufficient. Instead, the facts must generate evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. LEGAL DISCUSSION

The Plaintiffs take exception with the BIA's decision to advertise and lease the trust land and to distribute income generated by the leases to the Farm Service Agency. The Plaintiffs also take exception to what they consider to be the BIA's failure to provide timely notice of its decision to lease the trust land; the United States Department of Agriculture's failure to provide proper notice of its demands; the United States Department of Agriculture's refusal to entertain requests for relief;[3] Superintendent Brunsell's and Acting Superintendent Fox's refusal to implement the directives of the IBIA and the BIA Area Director; the BIA's distribution of lease proceeds to the Farm Service Agency; and the BIA's refusal to probate Ernest Wilkinson's estate.

The United States contends the Plaintiffs have not suffered an actual or concrete injury necessary to confer them with standing. The United States claims the Plaintiffs have never held a legal property right, or an interest in the trust land, or an interest in the rental payments superior to the rights of the United States. The United States also contends the Plaintiffs cannot sustain their negligence claims against the BIA because the Federal Tort Claims Act does not provide redress for a breach of federal statutory duties. Finally, the United States argues the Plaintiffs cannot sustain claims against Superintendent Brunsell and Acting Superintendent Fox in their individual capacities.

### A. STANDING

To invoke federal jurisdiction, a party must establish that it has met the requirements of both constitutional and prudential standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Delorme v. United States,* 354 F.3d 810, 815 (8th Cir. 2004). "The burden to show standing is not a mere pleading requirement, but rather an indispensable part of the plaintiff's case." *Id.* "Each and every element of the standing requirements must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.* It is well-established that strict compliance with the jurisdictional standing requirement is required. See *Johnson v. Missouri,* 142 F.3d 1087, 1088 (8th Cir.1998).

In order to establish standing and invoke federal jurisdiction, a plaintiff must demonstrate that (1) he has suffered an injury in fact which is actual, concrete, and particularized; (2) the injury is fairly traceable to the actions of the defendant, i.e., a causal connection; and (3) the injury will be redressed by a favorable decision. See *County of Mille Lacs v. Benjamin,* 361 F.3d 460 (8th Cir.2004) (citing *Bennett v. Spear,* 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997)); *United States v. Neset,* 235 F.3d 415, 420 n. 3 (8th Cir. 2000). As the non-moving parties facing a summary judgment motion, it is the Plain-

---

**3.** According to paragraph 20 of the Plaintiffs' complaint, a complaint filed by Ernest Wilkinson with the United States Department of Agriculture has been pending since 1990. The substance of this complaint and its relation to the present action is unclear.

tiffs' burden "to present some evidence to establish a genuine question of fact on the standing issues of injury and causation." *Oti Kaga, Inc. v. South Dakota Housing Dev. Auth.*, 342 F.3d 871, 878 (8th Cir. 2003). However, the Court's inquiry into standing is not a review of the merits of the Plaintiffs' claims. Instead, at the summary judgment stage the Court accepts as true all material facts alleged as long as they are capable of proof at trial.

### 1) INJURY IN FACT

■■ An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of the Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The United States contends the Plaintiffs cannot show they have suffered an injury because they have neither an interest in the trust land nor an interest in the rent proceeds collected as a result of leasing the trust land.

The United States is correct that the Plaintiffs did not have an interest in the trust land in March 1997 when it was leased by the BIA. Mollie Wilkinson passed away on September 11, 1991. Her trust property was divided between her husband, Ernest, and her children, Harry and Virginia. At that point in time, the United States had not accelerated its mortgage debt or perfected its rental lien. A claim against the estate did not exist and no action had been taken by the government to collect rent monies. Thus, a case or controversy did not exist.

As previously noted, Virginia Wilkinson inherited an interest in the trust land from Mollie Wilkinson. Harry Wilkinson died intestate on August 21, 1994. His estate was distributed entirely to his father (Ernest) as his sole heir. Ernest Wilkinson died on November 28, 1997, and his estate remains open and has not been probated.

Virginia Wilkinson passed away on November 27, 1998, bequeathing equal shares of her estate to her siblings, the named Plaintiffs in this lawsuit. However, Virginia Wilkinson's estate was not probated until September 30, 2003. Consequently, it was not until September 30, 2003, that the Plaintiffs acquired any legal interest in the land.

The United States did not file a claim against Virginia Wilkinson's estate. However, the United States contends its interest in the trust land, and the rental income derived from the land, is superior to any interest acquired by the Plaintiffs from Virginia Wilkinson's estate by virtue of its perfected mortgage and rental payment liens. The government also contends the IBIA failed to take into consideration the mortgage executed by Ernest and Mollie Wilkinson when the IBIA reached its decision in July 1998.

Ernest and Mollie Wilkinson originally had a possessory interest in the trust land, otherwise called an allotment. An allotment means a selection of a specific tract of land awarded to an individual allottee from a common land holding. Trust land refers to a possessory interest in allotted land held in trust by the United States for individual Indians. Under the allotment system, an eligible Indian was given a property interest in a specific tract of land. The allottee only has a possessory interest in the land, not a fee simple title. In other words, the land is owned in fee by the United States but held in trust for Native Americans.

Ernest and Mollie Wilkinson signed several promissory notes in favor of the Farm Service Agency from 1971–1990. See United States' Statement of Undisputed Facts, Ex. B. During this time frame, the Farm Service Agency recorded several mortgages encumbering the trust property. See United States' Statement of Un-

disputed Facts, Ex. C. 25 U.S.C. § 483a expressly authorizes Native Americans to mortgage trust land:

> § 483a. Mortgages and deeds of trust by individual Indian owners.
>
> (a)Foreclosure or sale of land

The individual Indian owners of any land which either is held by the United States in trust for them or is subject to a restriction against alienation imposed by the United States are authorized, subject to approval by the Secretary of the Interior, to execute a mortgage or deed of trust to such land. Such land shall be subject to foreclosure or sale pursuant to the terms of such mortgage or deed of trust in accordance with the laws of the tribe which has jurisdiction over such land or, in the case where no tribal foreclosure law exists, in accordance with the laws of the State or Territory in which the land is located. For the purpose of any foreclosure or sale proceeding the Indian owners shall be regarded as vested with an unrestricted fee simple title to the land, the United States shall not be a necessary party to the proceeding, and any conveyance of the land pursuant to the proceeding shall divest the United States of title to the land. All mortgages and deeds of trust to such land heretofore approved by the Secretary of the Interior are ratified and confirmed.

The undisputed evidence reveals the mortgages were approved by the Secretary of the Department of the Interior. As set forth in 25 U.S.C. § 483a, "[s]uch land shall be subject to foreclosure or sale pursuant to the terms of such mortgage...." A notice of acceleration and demand for payment was made by the Farm Service Agency against the Wilkinsons on October 9, 1997. The specific terms of the May 1990 mortgage included rights which inure to the mortgagee upon default, including the right to rent the property.

The mortgage debt incurred by Ernest and Mollie Wilkinson is currently $321,769.79. The property has been appraised at $177,000. The record clearly reveals that the United States had the legal authority to rent the trust land pursuant to the terms of the mortgage. Further, the United States also has a valid perfected security interest in the rental payments by virtue of its assignments with the Wilkinsons. See United States' Statement of Undisputed Facts, Ex. D. The Farm Service Agency holds several assignments which were signed by Ernest and Mollie Wilkinson. The assignments specifically assign income "as security for repayment of such loans...." The assignments apply to:

> All Income from all Trust land owned by the Borrower and located on the Fort Berthold Reservation.

Further, the assignments gave the Farm Service Agency the right to demand payments "for any income from such land and to apply all such income upon my (the Wilkinsons) indebtedness to the lender...." It is important to note that the assignments granted to the Farm Service Agency the right to collect rental payments from all third parties. Thus, even if the heirs had rented or worked the trust land, the Farm Service Agency was entitled to the income. The assignment also expressly provides as follows:

6. It is understood that in the case of my death, this assignment shall constitute a claim against any trust funds, income, or trust property superior to that of my heirs.

As previously noted, the mortgage executed by Ernest and Mollie Wilkinson in May of 1990 contemplated that the trust land could be leased in the event of default. Paragraph 17 of the mortgage provided in relevant part as follows:

> SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this

instrument, or should any one of the parties named as Borrower die ... the United States, at its option, may: (a) declare the entire amount unpaid under the note and any indebtedness to the United States hereby secured immediately due and payable, (b) for the account of the Borrower incur and pay reasonable expenses for repair and maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law. (emphasis added)

See Real Estate Mortgage for North Dakota, Document No. 312946 (United States's Statement of Undisputed Facts, Ex. C).

In the Order of July 6, 1998, the IBIA made no mention of the mortgage but instead focused solely on the "Assignment of Income from Trust Property" signed by Ernest and Mollie Wilkinson in favor of the Farm Service Agency. The assignment authorized the FSA to demand and collect income from the trust property for application toward the Wilkinsons' debt. The assignment also provided that, in the case of death, the assignment would constitute a claim against trust funds, income, or trust property superior to that of the Wilkinsons' heirs. The IBIA concluded that the BIA had erroneously interpreted the assignment as written authority to execute leases on behalf of the Wilkinsons. It reasoned that while the assignment authorized the BIA to pay the Farm Service Agency from income generated by the trust land, it did not expressly authorize the BIA to lease the land in order to generate income.

The Court finds that the July 1998 decision of the IBIA failed to take into account the undisputed mortgage rights of the Farm Service Agency. Upon default, the mortgage allows the FSA to take possession of the trust land and to rent the property. It is clear and undisputed that the Wilkinsons signed several promissory notes, agreed to the express terms of the mortgage, and agreed to the assignment of trust land rental income. The Secretary of the Interior approved the mortgage lien and its terms. 25 U.S.C. § 483a specifically provides for foreclosure pursuant to the terms of the mortgage. The decision of the IBIA ignored the valid mortgage rights and legal remedies of the Farm Service Agency. It is clear the United States has rights superior to the Plaintiffs' concerning the rental proceeds from the trust land. The Plaintiffs cannot establish an injury in fact, or establish a legal basis to sue the United States for rental proceeds. The IBIA does not have the authority to circumvent the mortgage rights or the valid security interests of the Farm Service Agency. The Court finds that the Plaintiffs do not have a property interest in either the leasing of the trust land or the rental proceeds collected from the trust land. The United States has a valid mortgage on the trust land, and a valid perfected security interest or lien on rental payments, which liens are superior to the rights of the Plaintiffs.

2) REDRESSABILITY

■ Even if the Plaintiffs could demonstrate they have suffered an injury in fact and that their injury is traceable to the actions of the Defendant, the Plaintiffs cannot demonstrate their injury will likely be redressed by a favorable decision. There is no dispute that the mortgage executed by the Wilkinsons was valid and that the United States has a valid perfected security interest in the rental payments

generated by the trust land by virtue of the mortgage and the assignment signed by Ernest and Mollie Wilkinson. There is no dispute the mortgage was in default and the United States served Ernest Wilkinson and Mollie Wilkinson's estate with a Notice of Acceleration and Demand for Payment in October 1997. The debt secured by the mortgage was not discharged upon Mollie Wilkinson or Ernest Wilkinson's death. As a result, any interest possessed by the Plaintiffs in the trust property and rental proceeds would be inferior or subordinate to the interests of the United States by virtue of the mortgage and the assignment executed by the Wilkinsons.

## B. BIVENS CLAIMS

The Plaintiffs also claim the BIA's actions constituted a violation of their Fifth Amendment rights to procedural and substantive due process. However, their claim fails as the record establishes that the BIA has not deprived the plaintiffs of an identifiable property right.

To establish a violation of either procedural or substantive due process, the Plaintiffs must initially show they were deprived of a property interest. *Parsons v. Pond,* 130 Ct.Cl. 277, 126 F.Supp.2d 205, 213 (D.Conn.2000). Such a showing cannot be made in this case. The Plaintiffs did not possess a property or liberty interest in the trust land at the time the land was leased. The Plaintiffs cannot, as a matter of law, show a property interest in the rent proceeds from the trust land which would establish a basis for a claim. The United States holds a valid mortgage on the trust land which gives the government the right to possess, rent, and foreclose on the property. In addition, the United States holds a valid perfected security interest in the rent proceeds by virtue of the mortgage and/or the assignment.

These rights are superior to the Plaintiffs and foreclose all other property claims.

## IV. CONCLUSION

The Plaintiffs have acknowledged in their responsive brief that they are not asserting claims against the Defendants in their individual capacities. The Court finds the Plaintiffs have not shown constitutional standing and have failed to demonstrate the deprivation of a property interest that is necessary to sustain a Bivens claim. As a result, the Court need not address the United State's assertion that the alleged violations of federal regulations by the BIA or the Farm Service Agency do not establish state law duties under the Federal Tort Claims Act as required by 28 U.S.C. § 1346(b).

The Defendants' Motion for Summary Judgment (Docket No. 17) is GRANTED. The Plaintiffs' complaint is dismissed with prejudice.

IT IS SO ORDERED.