# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

---

No. 97-3678

---

Lisa A. Rorie,    *
                  *
        Appellant,    *
                  *  Appeal from the United States
    v.            *  District Court for the
                  *  Western District of Arkansas.
United Parcel Service, Inc.,    *
                  *
        Appellee.    *

---

Submitted: May 14, 1998

Filed: July 23, 1998

---

Before BOWMAN, Chief Judge, HEANEY and HANSEN, Circuit Judges.

---

HEANEY, Circuit Judge.

Lisa A. Rorie was a United Parcel Service (UPS) employee from January 25, 1993 until UPS fired her on February 9, 1996. She filed suit in federal district court alleging that UPS managers and employees harassed her, that the harassment created a hostile work environment, and that UPS discharged her in violation of Title VII, 42 U.S.C. §§ 2000e-2000e-17, and Arkansas state law. The district court granted summary judgment in favor of UPS and Rorie appeals. We reverse in part and affirm in part.

# I.

The facts of this case are discussed at length in the district court's opinion, see Rorie v. United Parcel Service, Inc., No. 96-3089, Mem. Op. (W.D. Ark. Sept. 25, 1997), and we recount only those facts relevant to the determination of this case. Rorie began working for UPS on January 25, 1993, as a package car driver in Harrison, Arkansas and was a member of the International Brotherhood of Teamsters, Chauffeurs, Warehouseman and Helpers of America and Local Union 373 (Union). During the relevant time period, the Union had a collective bargaining agreement (CBA) with the UPS. Rorie alleged that Kim Lofton, her supervisor from the time she began her employment until May or June of 1995, repeatedly harassed her and treated her unfairly.[1]

In May or June 1995, Tommy Rutledge became Rorie's supervisor, which he remained until her termination. In September 1995, UPS opened the Mountain Home Center. Rorie, Rutledge, and Randy McFadden all transferred to the Mountain Home Center. McFadden, who managed the Harrison Center since May 1995, also managed the Mountain Home Center. In her deposition, Rorie contended that McFadden sexually harassed her, testifying that McFadden frequently told her that she smelled good, patted her on the back, and brushed up against her. She alleged that McFadden's behavior continued throughout her employment with UPS, and that McFadden's behavior was offensive and that she considered it sexual harassment.

On February 9, 1996, Clyde Dismuke, a UPS investigator reviewing the records of the Mountain Home Center, confronted Rorie about missing "cash on delivery"

---

[1]According to Rorie, the majority of events upon which her discharge and hostile environment claims are predicated involve the actions of Lofton. Because Lofton's actions fall outside the 180-day period and cannot be considered part of a continuing violation, we need not elaborate on them. We note that Rorie never filed a complaint or grievance based on Lofton's actions.

(COD) money. Dismuke relayed the information from his investigation to Bob Ragar, the UPS labor relations manager. Based on Dismuke's findings, Ragar decided to terminate Rorie under Article 51 of the CBA for failure to turn in COD monies. On February 9, 1996, Rutledge informed Rorie of her termination.[2] Rorie does not suggest that Ragar was aware of any harassment. During the relevant time period, Ragar fired four other drivers--all male--for apparent dishonesty in handling COD money, with three of the firings resulting from investigations performed by Dismuke.

On March 5, 1996, Rorie filed a grievance pursuant to the existing CBA. On November 20, 1996, after a period of deadlocks in the grievance procedure, the Southern Conference Area Parcel Grievance Committee (Grievance Committee) denied her grievance. Under the CBA, the Grievance Committee's decision was final and binding. On May 31, 1996, Rorie filed a charge of sex discrimination with the EEOC and, on December 5, 1996, received a right-to-sue letter.

On December 20, 1996, Rorie filed suit in federal district court. She alleged that UPS subjected her to disparate treatment, harassment, and ultimately terminated her because of her gender in violation of Title VII. In addition, Rorie asserted Arkansas state law claims of intentional infliction of emotional distress (outrage) and a claim of wrongful discharge.

On September 25, 1997, the district court granted summary judgment in favor of UPS. With regard to Rorie's Title VII discharge claim, the district court held that Rorie failed to provide evidence indicating intentional discrimination and, even assuming she could make out a prima facie case, Rorie was unable to show that the reason for her termination was pretextual. As to Rorie's Title VII harassment claim, the district court determined that the alleged incidents of harassment involving two UPS

---

[2]We note that nothing in the record suggests that Ragar discussed this matter with Dodson, Lofton, Rutledge, or McFadden.

employees occurred more than 180 days before Rorie filed her EEOC complaint. The district court determined that the remaining alleged incidents falling within the 180-day period could not support her hostile-environment claim. Finally, the district court determined that Rorie's allegations did not sustain her Arkansas state law claims of outrage and wrongful termination. Rorie appeals.

## II.

"Summary judgment is only appropriate when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." Callanan v. Runyun, 75 F.3d 1293, 1296 (8th Cir. 1996) (citations omitted). In our de novo review of the district court's grant of summary judgment, "we apply the same standard as the district court, resolving all disputed facts and drawing all inferences in favor of the nonmoving party." Id. (citation omitted).

A. Discharge Claim

Title VII prohibits an employer from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment" on the basis of her gender. 42 U.S.C. § 2000e-2(a)(1). In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the United States Supreme Court set forth burden-shifting standards to be applied in Title VII cases. First, the plaintiff must establish a prima facie case of discrimination. See id. at 802. If the plaintiff successfully makes out her prima facie case, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id.

> [W]hen the employer produces a nondiscriminatory reason for its actions, the prima facie case no longer creates a legal presumption of unlawful discrimination. The elements of the prima facie case remain, however, and if they are accompanied by evidence of pretext and disbelief of the defendant's proffered explanation, they may permit the jury to find for the

plaintiff. . . . Furthermore, as the <u>Hicks</u> Court explained, the plaintiff must still persuade the jury, from all the facts and circumstances, that the employment decision was based upon intentional discrimination.

<u>Ryther v. KARE 11</u>, 108 F.3d 832, 837-38 (8th Cir. 1997) (citation and footnote omitted) (emphasis in original).

In order to make out a prima facie discharge claim under Title VII, Rorie must show that (1) she is a member of a protected group; (2) that she met applicable job qualifications; (3) that she was discharged; and (4) that her discharge occurred under circumstances that create an inference of unlawful discrimination. <u>See</u> <u>Thomas v. First Nat'l Bank of Wynne</u>, 111 F.3d 64, 66 (8th Cir. 1997) (citations omitted).

The district court held that, even if Rorie had established a prima facie case, she failed to show that her termination was pretextual. <u>See</u> <u>Rorie</u>, No. 96-3089, Mem. Op. at 24. We agree with the district court that the relevant inquiry was whether Rorie created a genuine issue of material fact as to whether her discharge was gender-based and not whether her termination was reasonable. It is not the task of this court to determine whether Dismuke's investigation was sufficiently thorough or fair. After a careful review of the record, we agree with the district court that Rorie failed to create a genuine issue of material fact. Accordingly, we affirm the district court's grant of summary judgment on Rorie's discharge claim.

B. Hostile Environment Claim

Rorie may "establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." <u>Meritor Savings Bank v. Vinson</u>, 477 U.S. 57, 66 (1986). "For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" <u>Id.</u> at 67 (citation omitted). Therefore,

5

Rorie "must show both that the offending conduct created an objectively hostile environment and that she subjectively perceived her working conditions as abusive." Hathaway v. Runyon, 132 F.3d 1214, 1221 (8th Cir. 1997) (citation omitted).

As a general matter, actionable incidents of sexual harassment are those that occur within 180 days of filing a complaint with the EEOC. See 42 U.S.C. § 2000e-5(e)(1). Therefore, the relevant "cut-off" date for conduct that can be considered under Rorie's hostile environment claim is December 3, 1995. However, if Rorie can show that "an ongoing pattern or practice of discrimination rather than one isolated instance, the alleged violation shall be deemed continuing." Jenson v. Eveleth Taconite Co., 130 F.3d 1287, 1303 (8th Cir. 1997) (citations and emphasis omitted), cert. denied sub nom., Oglebay Norton Co. v. Jensen, No. 97-1765, 1998 WL 221095 (U.S. June 26, 1998). Even if a plaintiff is unable to show a continuing violation, however, we have held that instances of harassment occurring outside the 180-day period may be admissible to provide relevant background to later discriminatory acts. See Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 573 (8th Cir. 1997) (citing United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977)) ("Incidents which occurred outside the filing period also may be admissible as relevant background to later discriminatory acts."); see also Delph v. Dr. Pepper Bottling Co. of Paragould, Inc., 130 F.3d 349, 355 (8th Cir. 1997) (citation omitted) (evidence supporting a finding of a hostile environment need not be compartmentalized, but should be based on the totality of circumstances).

UPS argues that the only allegations falling within the 180-day period are McFadden's comments about Rorie smelling good, patting her on the back, and brushing up against her. UPS contends that these actions are insufficient to support a hostile environment claim because McFadden was seldom in the Mountain Home Center, spending most of his time managing the Batesville and Harrison centers. UPS also contends that Rorie failed to complain of McFadden's conduct. We disagree.

In September 1995, McFadden telephoned Rorie at home. During their conversation, McFadden asked Rorie if she would like to go swimming and whether she had heard the rumors about a co-worker's penis size. She declined the swimming invitation. During the same conversation, Rorie complained to McFadden about a female co-worker's attitude toward her. McFadden told her it was because Rorie looked better in the UPS uniform than the other woman. Rorie testified that McFadden would often tell her that she smelled good, pat her on the back, and brush up against her. This behavior continued throughout her employment with UPS. Rorie testified that she thought McFadden was constantly "coming on" to her; she characterized him as "always flirty" and said that was "[j]ust the way he [was] with women"; and she considered McFadden's behavior offensive and believed that it constituted sexual harassment. Rorie stated in her deposition that she complained about McFadden's behavior to seniority driver Jim Riddle and union steward Melvin Shaddox and that she was unaware of any company policy regarding sexual harassment.

While we concede that the facts of this case are on the borderline of those sufficient to support a claim of sexual harassment, we cannot say that a supervisor who pats a female employee on the back, brushes up against her, and tells her she smells good does not constitute sexual harassment as a matter of law. Recognizing that the September 1995 conversation falls outside of the 180-day period, we believe that, at the very least, McFadden's comments suggest that his later behavior presents a jury question as to hostile environment.

Our remand of this case is also counseled by recent developments in Title VII case law. On June 26, 1998, after oral argument in this case, the United States Supreme Court decided two important cases. See Burlington Indus., Inc. v. Ellerth, No. 97-569, 1998 WL 336326 (June 26, 1998); Faragher v. City of Boca Raton, No. 97-282, 1998 WL 336322 (June 26, 1998). In both cases, the Supreme Court held that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by [the employee's] supervisor." Ellerth at *15;

7

Faragher at *19.  An employer may defend against liability or damages, however, if it establishes by a preponderance of the evidence "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Ellerth at *15; Faragher at *19.

Accordingly, we reverse the district court's grant of summary judgment in favor of UPS on Rorie's hostile environment claim.

C.  Outrage Claim

In order to establish a claim for outrage under Arkansas law, Rorie must have shown that (1) UPS intended to inflict emotional distress or knew or should have known emotional distress was the likely result; (2) UPS's conduct was extreme, outrageous and utterly intolerable in a civilized community; (3) UPS's actions caused anguish or distress to Rorie; and (4) the emotional distress suffered was severe and of a type that no reasonable person should be expected to endure.  See Hollomon v. Keadle, 931 S.W.2d 413, 415 (Ark. 1996) (citations omitted).  We note that the Arkansas Supreme Court has repeatedly held that "the tort of outrage is not favored by this court and that clear-cut proof is required to establish the elements in outrage cases."  Shepherd v. Washington County, 962 S.W.2d 779, 792 (Ark. 1998) (citations omitted).  After carefully reviewing the record, we agree with the district court that the alleged instances of discrimination and harassment do not support an outrage claim and that summary judgment was properly granted.

D.  Wrongful Termination Claim

In its summary judgment motion, UPS argued that Rorie's state law wrongful termination claim was tantamount to a claim brought under the Arkansas Civil Rights

Act of 1993, Ark. Code Ann. §§ 16-123-101 to 108, and must fail for the same reasons as her Title VII claim. Alternatively, UPS argued that her claim was preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. In granting summary judgment, the district court noted that Rorie failed to respond to UPS's arguments and assumed that she had abandoned her claim or agreed with UPS as to preemption. In the alternative, the district court, having disposed of Rorie's federal claims, declined to exercise jurisdiction. It is far from clear whether Rorie abandoned her claims and, because we reverse in part, we remand this issue to the district court for a clear determination of whether Rorie, in fact, abandoned her claims; and if she did not, whether, based on our decision here, the district court properly exercises jurisdiction over those claims.

### III.

For the reasons discussed above, we affirm the district court's grant of summary judgment in favor of UPS on Rorie's Title VII discharge claim and Arkansas state law claim of outrage. Because Rorie presented genuine issues of material fact on her Title VII hostile environment claim, we reverse the district court's grant of summary judgment on that issue. Further, because the district court declined to exercise jurisdiction over her state law wrongful termination claim at least in part due to its disposition of her federal claims and because we reinstate a portion of Rorie's federal claims, we remand the issue for a clear determination of the proper disposition of the state law wrongful termination claim.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.