# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 99-4180

_____

Paul Hudson,                                      *
                                                  *
            Appellee,                           *
                                                  *
      v.                                       *   Appeal from the United States
                                                  *   District Court for the Eastern
Larry Norris, Individually and in His             *   District of Arkansas.
Official Capacity as Director, Arkansas           *
Department of Correction; G. David                *
Guntharp, Individually and in His                 *
Official Capacity as Deputy Director,             *
Arkansas Department of Correction;                *
Greg Harmon, Individually and in His              *
Official Capacity as Warden, Tucker               *
Maximum Security Unit, Arkansas                   *
Department of Correction; Steve Outlaw,*
Individually and in His Official Capacity*
as Assistant Warden, Tucker Maximum               *
Security Unit, Arkansas Department of             *
Correction; Richard Rogers, Individually*
and in His Official Capacity as                   *
Grievance Officer, Arkansas                       *
Department of Correction; Richard                 *
Wimberly, Individually and in His                 *
Official Capacity as Chief of Security,           *
Arkansas Department of Correction;                *
James Gibson, Individually and in His             *
Official Capacity as Internal Affairs             *
Investigator, Arkansas Department of              *
Correction; and Randy Watson,                     *
Individually and in his Official Capacity *

as Personnel Official, Arkansas     *
Department of Correction,     *
    *
       Appellants.     *

_____

Submitted: June 15, 2000

Filed: September 6, 2000

_____

Before BOWMAN, FLOYD R. GIBSON,[1] and MORRIS SHEPPARD ARNOLD,
Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Paul Hudson was an employee of the Arkansas Department of Correction (ADC) when he was called upon to testify in a lawsuit between a former co-worker and the ADC. Mr. Hudson gave testimony that was detrimental to the ADC, and he contends that the ADC took several adverse employment actions against him shortly thereafter. He sued under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act of 1993, *see* Ark. Code Ann. § 16-123-101 through § 16-123-108, naming as defendants various ADC employees in their individual and official capacities. Mr. Hudson claimed that the defendants retaliated against him for giving testimony, in violation of his rights under the first amendment and the due process and equal protection clauses of the fourteenth amendment. Mr. Hudson sought both monetary and injunctive relief.

The district court granted summary judgment in favor of the defendants, in both their individual and official capacities, on Mr. Hudson's due process and equal

_____

[1]Complications from an automobile accident have prevented Judge Gibson from reviewing this opinion prior to its being filed.

-2-

protection claims. On the first amendment claim, however, the district court granted summary judgment to the defendants in their official capacities but denied summary judgment to them in their personal capacities. The defendants appeal from this denial, arguing that they are entitled to qualified immunity on Mr. Hudson's first amendment claim. We affirm in part and reverse in part.

I.

We review a district court's denial of summary judgment *de novo*. *See Collins v. Bellinghausen*, 153 F.3d 591, 595 (8th Cir. 1998). Ordinarily, a denial of summary judgment is not a "final" decision and is therefore not immediately appealable, *see* 28 U.S.C. § 1291. A denial of summary judgment on the ground of qualified immunity, however, may be reviewed on interlocutory appeal when the issue presented "is a purely legal one: whether the facts alleged ... support a claim of violation of clearly established law," *Mitchell v. Forsyth*, 472 U.S. 511, 528 n.9 (1985).

Qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful, "in light of clearly established law and the information [that the defendant] possessed," *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Although qualified immunity is " 'an immunity from suit rather than a mere defense to liability,' " *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*) (emphasis omitted), quoting *Mitchell*, 472 U.S. at 526, and therefore its availability "ordinarily should be decided by the court long before trial," *Hunter*, 502 U.S. at 228, the nonmoving party is still given the benefit of all relevant inferences at the summary judgment stage, and if a "genuine dispute exists concerning predicate facts material to the qualified immunity issue, the defendant is not entitled to summary judgment on that ground," *Pace v. City of Des Moines*, 201 F.3d 1050, 1056 (8th Cir. 2000).

To deny the defendants' motion for summary judgment on the ground of qualified immunity in this case, therefore, we must make two findings: First, we

-3-

must find that the record, when viewed in a light most favorable to Mr. Hudson, would allow a reasonable finder of fact to conclude that the defendants engaged in a course of conduct that violated his clearly established constitutional rights. *See Lambert v. City of Dumas*, 187 F.3d 931, 935 (8th Cir. 1999). Second, we must find as a matter of law that no reasonable official could have thought that such a course of conduct was lawful. *See Pace*, 201 F.3d at 1056, quoting *Hunter*, 502 U.S. at 228 ("whether an officer 'acted reasonably under settled law in the circumstances' ... is a question of law, and not itself a predicate fact").

We begin with the question of whether the record in this case would allow a reasonable finder of fact to conclude that Mr. Hudson's first amendment rights had been violated. To establish a *prima facie* case of unlawful retaliation, an employee must show that he or she participated in a protected activity, that the employer took an adverse employment action against him or her, and that a causal connection existed between the protected activity and the adverse employment action. *See Graning v. Sherburne County*, 172 F.3d 611, 615 (8th Cir. 1999). Once a *prima facie* case has been made, the burden shifts to the employer to articulate a non-discriminatory reason for the adverse employment action. *See id.* The employee then has an opportunity to prove that the reason given is pretextual. *See id.*

The defendants do not dispute that the first amendment protects Mr. Hudson's right to testify in the trial of his co-worker. Mr. Hudson claims that a number of incidents took place in retaliation for this protected speech, and the defendants did not argue in the district court that these incidents did not constitute adverse employment actions. Although the defendants suggest in passing for the first time on appeal, and without any citation to authority, that some of the incidents do not rise to the level of adverse employment actions, we will not consider arguments not raised in the district court. *See Liberty Mutual Insurance Co. v. Elgin Warehouse and Equipment,* 4 F.3d 567, 570 n.2 (8th Cir. 1993). The defendants may raise these issues on remand in a renewed motion for summary judgment, or at some other

-4-

appropriate juncture, if they wish. At this point, however, we focus on the much-disputed third element of the *prima facie* case, namely, whether Mr. Hudson has made a sufficient showing of a causal connection between the protected conduct and the adverse employment actions.

## II.

Mr. Hudson points first to the temporal proximity between the protected conduct and the adverse employment actions of which he complains, all of which took place within four months after he gave his testimony, as proof of the requisite causal connection. Our decisions have, depending on the circumstances, assigned varying weights to evidence of temporal proximity between protected conduct and an adverse employment action: The perceived import of such temporal proximity has ranged from being sufficient, by itself, to create an inference of causation, *see, e.g.*, *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1105 (8th Cir. 2000), and *O'Bryan v. KTIV Television*, 64 F.3d 1188, 1193 (8th Cir. 1995), to being nothing more than a "slender reed of evidence," *Caudill v. Farmland Industries, Inc.*, 919 F.2d 83, 87 (8th Cir. 1990), that was not enough to support an inference of causation, *see, e.g.*, *id.* at 86-87, and *Nelson v. J.C. Penney Company, Inc.*, 75 F.3d 343, 346-47 (8th Cir. 1996), *cert. denied*, 519 U.S. 813 (1996).

In the circumstances of Mr. Hudson's case, we think that the temporal proximity of the adverse employment actions is significant. The defendants do not dispute that Mr. Hudson had a very good employment record with the ADC prior to his testimony at his co-worker's trial. Within the four months following his testimony, he was ordered to evict a co-habitant from his trailer on the prison grounds, was subjected to two internal affairs investigations, was denied a promotion, and was denied accrued vacation time. While we agree that the mere coincidence of close timing is generally not enough to create an inference of causation, there is more than a simple concurrence of two events here: The large number of adverse actions that occurred hard on the heels of the protected activity in this case, particularly when juxtaposed with Mr. Hudson's previously strong employment record, is significant

evidence that what happened here was more than just coincidence. *See Bassett*, 211 F.3d at 1106.

Mr. Hudson's demonstration of a causal connection is further strengthened by his proof that the reasons that the defendants gave for some of their adverse employment decisions were unfounded. The Supreme Court has recently reaffirmed its support for the principle that a finder of fact may infer an improper motive from evidence of the falseness of an employer's proffered justification for an adverse action. *See Reeves v. Sanderson Plumbing Products, Inc.*, 120 S. Ct. 2097, 2108 (2000); *see also Campbell v. Arkansas Department of Correction*, 155 F.3d 950, 958 (8th Cir. 1998). This evidence, therefore, does double duty for a plaintiff: It tends to show a causal link between the protected conduct and the adverse action, and it also tends to show that the justification given by a defendant was pretextual.

One of the adverse actions of which Mr. Hudson complains is an order that he evict a co-habitant, who happened to be an ex-inmate, from his trailer on the part of the prison grounds known as the "free line." Mr. Hudson had received permission from the previous warden to live on the free line, and that warden had also known that the ex-inmate was living with Mr. Hudson. Indeed, that warden had commended Mr. Hudson for his efforts to act as a mentor to inmates and to help them in their transition back to society. Within several weeks after Mr. Hudson gave his testimony, however, Warden Steve Outlaw ordered Mr. Hudson to evict the ex-inmate from his trailer. This order was approved by Deputy Director David Guntharp, who has the ultimate authority for living arrangements on the free line. Although the defendants argue that the eviction was ordered for security reasons, Mr. Hudson asserts that the ex-inmate was wearing an electronic monitoring device and that the previous warden had considered the issue and had found the security risk acceptable.

Mr. Hudson asserts in addition that Warden Greg Harmon denied his request to take his accrued leave time near the end of his tenure with the ADC. Warden

Harmon stated in a deposition that he denied Mr. Hudson's request because Mr. Hudson had taken a lot of time off recently, and because he did not like the fact that Mr. Hudson was attempting to take leave time immediately prior to his resignation. Warden Harmon later admitted, however, that he would allow employees with clean service records to take accumulated leave time prior to leaving the employment of the ADC, and that he was unaware of any complaints about Mr. Hudson's employment efforts. Mr. Hudson's immediate supervisor, Chief of Security Richard Wimberly, admitted in a deposition, moreover, that he did not think that Mr. Hudson had taken too much time off.

Mr. Hudson also contends that he was denied a promotion to a higher position. Of the nine candidates for that position, Mr. Hudson was ranked second by a three-member selection committee. Assistant Warden Steve Outlaw, who had the responsibility for choosing the most qualified candidate, exercised his option under ADC policy to interview the top three candidates, and he ultimately selected the candidate who had been ranked first by the selection committee. There is evidence, however, that the previous warden, prior to resigning his position, had recommended Mr. Hudson as the most qualified candidate. By affidavit, the previous warden also stated that Assistant Warden Outlaw had had problems in the past with the candidate who was ultimately given the promotion, but that Assistant Warden Outlaw promoted that candidate over Mr. Hudson because the first-ranked candidate was the "most acceptable of two undesirable choices." It is a reasonable inference that Mr. Hudson was considered "undesirable" not because of his job performance but because he had previously given testimony adverse to the ADC.

We agree with the defendants that the mere fact that the actions taken against Mr. Hudson were unfair, if they were, would not by itself be enough to give Mr. Hudson a cause of action. *See Rorie v. United Parcel Service, Inc.*, 151 F.3d 757, 761 (8th Cir. 1998). The facts and circumstances of *Rorie*, however, on which the defendants rely heavily, serve to distinguish it from our case. In *Rorie*, 151 F.3d at

759, the plaintiff was dismissed from work after an internal investigation determined that she had withheld funds received from cash-on-delivery drop-offs. The plaintiff claimed that the results of the investigation were incorrect, and therefore that her termination was based on gender discrimination. *See id.* at 760-61. The district court found that the plaintiff failed to show that the reasons given for her termination were pretextual and we affirmed, noting that "the relevant inquiry was whether Rorie created a genuine issue of material fact as to whether her discharge was gender-based and not whether her termination was reasonable," *id*. at 761. There was absolutely no other indication of gender-related animus by the manager who terminated the plaintiff, and four male employees were also fired as a result of an internal investigation. *See id.* at 759-60.

In Mr. Hudson's case, on the other hand, he had recently taken the lawful, but unquestionably inflammatory step of giving testimony that was detrimental to the ADC and some of its employees. Shortly after Mr. Hudson gave his testimony, the defendants took adverse actions against Mr. Hudson alone, and there was evidence that the reasons given for some of these actions were false. In the circumstances of this case, especially when one adds to the mix the fact that Mr. Hudson's employment record had been exemplary, we believe that Mr. Hudson has provided sufficient evidence to allow a reasonable jury to infer a causal link between his testimony and the adverse actions of which he complains. *See Reeves*, 120 S. Ct. at 2108.

III.

Although we believe, for the reasons indicated, that a reasonable jury could infer from the course of events in this case that Mr. Hudson was retaliated against, some of the named defendants played little or no role in any of the adverse employment actions. We consider, therefore, the extent of each defendant's role in each incident. As we have indicated in the foregoing discussion, we believe that Messrs. Guntharp, Harmon, Outlaw, and Gibson had significant roles in the adverse

-8-

employment decisions, and we believe that a reasonable jury could conclude that these four defendants unlawfully retaliated against Mr. Hudson.

Mr. Hudson has not, however, made any specific allegations against Director Larry Norris, nor has he presented any evidence that Director Norris played any role in the various incidents. During oral argument, Mr. Hudson speculated that Director Norris, as the head of the ADC, perhaps had some knowledge of the various actions that had been taken. We do not think that the mere fact that Director Norris was a superior officer of the other defendants is enough for a reasonable jury to find that Director Norris was himself involved in any unlawful activity.

In his complaint, Mr. Hudson suggested that Grievance Officer Richard Rogers denied him due process by refusing to consider grievances that he had filed. The district court granted summary judgment to Grievance Officer Rogers on that claim, however, and Mr. Hudson did not appeal from the ruling, nor does he now claim that Grievance Officer Rogers engaged in any other wrongdoing.

The only involvement that Chief of Security Wimberly had in the incidents described in Mr. Hudson's brief is connected to the denial of Mr. Hudson's leave time. But it is undisputed that Chief of Security Wimberly was not authorized to approve the leave time that Mr. Hudson requested, and that it was Mr. Harmon who ultimately denied Mr. Hudson's request. We believe, therefore, that Mr. Hudson has failed to show that Chief of Security Wimberly took any discretionary actions that were motivated by a retaliatory animus: The evidence is that Chief of Security Wimberly did nothing but follow established procedure.

Personnel Officer Randy Watson was involved in the denial of a promotion for Mr. Hudson, but he merely forwarded the evaluations of the selection committee to Assistant Warden Outlaw, the ultimate decision-maker. Although Mr. Hudson presented some evidence suggesting that Personnel Officer Watson viewed

Mr. Hudson as an "undesirable choice" for the promotion, there was nothing to rebut the evidence that Personnel Officer Watson played only a clerical role in the promotion process and exercised no influence over the decision.

We therefore conclude that the district court should have granted summary judgment in favor of Messrs. Norris, Rogers, Wimberly, and Watson.

IV.

Having found that a reasonable finder of fact could conclude that Messrs. Guntharp, Harmon, Outlaw, and Gibson unlawfully retaliated against Mr. Hudson, we turn to the question of whether a reasonable officer could have believed that such conduct was lawful. We have previously held that no reasonable officer could believe that retaliating against an employee for exercising free speech rights, including the right to testify on a matter of public concern such as prison administration, was permissible. *See Campbell*, 155 F.3d at 960. We hold, therefore, that Messrs. Guntharp, Harmon, Outlaw, and Gibson are not entitled to qualified immunity on Mr. Hudson's first amendment claim.

Mr. Hudson also brought a free speech claim against the defendants under the Arkansas Civil Rights Act of 1993, which provides a cause of action to anyone deprived of any rights or privileges secured by the Arkansas Constitution by persons acting under the color of state law. *See* Ark. Code Ann. § 16-123-105(a); *see also* Ark. Const. art. 2, § 4, § 6. Neither party argues that the Arkansas Constitution provides a different level of protection for speech from that provided by federal law, and the Arkansas Supreme Court has held that the legal principles that govern questions of qualified immunity in federal § 1983 claims apply to claims brought under the Arkansas Civil Rights Act. *See Robinson v. Langdon*, 970 S.W.2d 292, 296 (Ark. 1998). We hold, therefore, that Messrs. Guntharp, Harmon, Outlaw, and Gibson are not entitled to qualified immunity on this claim.

V.

For the reasons already given, therefore, we affirm the district court's denial of summary judgment on Mr. Hudson's first amendment claim under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act of 1993 with respect to Messrs. Guntharp, Harmon, Outlaw, and Gibson, and we reverse the district court's denial of summary judgment on Mr. Hudson's first amendment claim under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act of 1993 with respect to Messrs. Norris, Rogers, Wimberly and Watson. We remand the case to the district court for further proceedings not inconsistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.